John **KOUTOUFARIS** and Marlene Koutoufaris, Defendants Below, Appellants,

v.

Deborah M. **DICK**, Plaintiff Below, Appellee, Cross Appellant,

v.

Roger M. **KEITH**, Defendant Below, Cross Appellee.

Supreme Court of Delaware.

Submitted: Nov. 26, 1991.
Decided: Feb. 10, 1992.

---

Stephen B. Potter (argued), Potter, Crosse and Leonard, P.A., Wilmington, for appellants and cross appellee.

Randall E. Robbins (argued), and Barbara H. Stratton, Ashby, McKelvie & Geddes, Wilmington, for appellee, cross appellant.

Before CHRISTIE, C.J., HORSEY, MOORE and WALSH, JJ., and HARTNETT, Vice Chancellor, (sitting by designation pursuant to Del. Const. art. IV, § 12), constituting the Court en banc.

WALSH, Justice:

This is an appeal from a decision of the Superior Court that denied motions for judgment notwithstanding the verdict ("judgment n.o.v.") and/or the grant of a new trial following a jury award of $600,-000 for an assault and abduction suffered by plaintiff-appellee, Deborah Dick. The incident giving rise to plaintiff's claim occurred in the parking lot adjacent to her place of employment, Blue Coat Inn ("BCI") in Dover. The jury determined that the assault resulted from the failure of the owners of the lot, John and Marlene Koutoufaris and Roger Keith, to provide adequate lighting and security. Post-trial, the trial judge absolved Keith of liability but refused to disturb the verdict as to the Koutoufarises. The Koutoufarises appeal from the denial of judgment n.o.v. or a new trial. Plaintiff cross-appeals from the granting of judgment n.o.v. in favor of Keith and the earlier grant of summary judgment regarding punitive damages. We conclude that there was no error in the trial court's post-trial rulings or in its earlier granting of summary judgment. Accordingly, we affirm.

I

At the time of the incident in question, the plaintiff, a college student, was working as a summer waitress at BCI. On the evening of August 14, 1988, she left her place of employment and walked to the far end of the restaurant parking lot where she had parked her car. Because the restaurant had closed and the parking lot was deserted, plaintiff had asked a busboy to accompany her to her car. He did so but when they came within sight of her car the busboy returned to the restaurant. After she entered her vehicle and started the engine, plaintiff rolled down the window and waited for the engine to warm up because it had been experiencing starting problems. While she waited she began transferring her tip money from her pockets to her purse. An assailant, who has never been identified, reached through the open window, unlocked the door and forced his way into the vehicle. The assailant punched plaintiff in the face and drove off with her while holding her in a headlock. He drove to a nearby cornfield, raped her and then fled with her car keys. Although

tied with jumper cables, plaintiff managed to free herself and run to a nearby residence. She was treated for her physical and sexual injuries at a local hospital.

The area where the assault occurred was in a portion of the parking lot farthest from the restaurant. All employees except Mrs. Koutoufaris were required to park there. It was partially obscured by high bushes and not easily visible from the adjacent highway. Prior to the assault on plaintiff, other waitresses had complained to BCI management about the parking policy and inadequate lighting. A lighting expert testified on plaintiff's behalf that lighting in the area where the assault occurred was far below minimum industry standards. There was also evidence that the BCI parking lot had a history of criminal activity. In the four years prior to the assault on plaintiff, police records reflect that fourteen minor crimes, such as theft and vandalism, occurred in the restaurant vicinity, most within the BCI parking lot. While none of the incidents resulted in physical injury, the majority involved BCI employees as victims and none resulted in arrests.

Responsibility for safety in the parking lot was a matter of considerable dispute at trial because of the complex rental arrangement which the Koutoufarises had established. The Koutoufarises and Roger Keith (who is Mrs. Koutoufaris' brother) were the owners of the premises, including the restaurant and the parking lot. As lessors they rented the restaurant and parking lot to BCI, a corporation of which Koutoufarises were the sole stockholders. Both Koutoufarises were active in the management of BCI. The lease between the Koutoufarises and their corporate *alter ego*, BCI, provided that the lessee shall be responsible "for any and all reasonable maintenance of said buildings, including plumbing, heating and electrial [sic] installation, as well as ground maintenance, sea wall repair, etc...." The lease was silent on the question of responsibility for safety or security of any part of the premises,

including the parking lot. At some point after the lease had been executed, the Koutoufarises transferred certain maintenance responsibilities to a partnership, "JOMAR Enterprises", of which they were the sole partners.

The Koutoufarises advance several claims of error concerning evidentiary rulings of the trial court and instructions to the jury. In her cross-appeal, plaintiff contends that the trial court erred in granting judgment n.o.v. to Keith and in denying her claim for punitive damages. In supplemental briefing, the parties also dispute the question of whether plaintiff is limited to a remedy under workmen's compensation. These contentions will be separately addressed.

II

At the outset, we note that certain claims of error asserted by the Koutoufarises are not properly before this Court for review and will thus not be considered on their merits. Their claims relating to the issues of foreseeability and proximate cause, denominated as such, were not the subject of either a motion for directed verdict or for judgment n.o.v. Thus, those assertions cannot be raised here for the first time. *Peters v. Gelb,* Del.Supr., 314 A.2d 901 (1973); Supr.Ct.R. 8.[1] Similarly, the contentions that the verdict was excessive and that the jury was erroneously instructed regarding plaintiff's claim for future medical expenses, pain and impairment were not included in the alternative motion for judgment n.o.v. or for a new trial and are now barred from review. Supr.Ct.R. 8.

III

The principal area of dispute at trial, and on appeal, concerns the legal standard which measures the duty of the landowners, the Koutoufarises and to a limited extent, Keith, with respect to the safety of plaintiff. The trial court's ruling in this

---

1. To the extent that foreseeability and proximate cause are elements of recovery in a claim by a business invitee, such questions will be considered, *infra,* in the discussion of Restatement § 343A.

regard was made through rejection of a proposed jury instruction and confirmed post-trial, in a decision denying judgment n.o.v. We review this determination *de novo*, as a clear question of law. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927 (1982).

█ It was plaintiff's contention at trial that she was a business invitee and that the Koutoufarises, as owners of the parking lot, breached a duty to warn or protect her against unreasonable danger. The Koutoufarises argued that, as a matter of law, they owed no duty to plaintiff but if the question of liability were deemed a factual one, the jury should be instructed that any such duty should be gauged under the standard reflected in Restatement (Second) of Torts § 343A(1) which provides:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

The trial judge refused to instruct the jury under the Restatement standard, ruling that § 343A created an absolute bar to recovery by a business invitee that was incompatible with the doctrine of comparative negligence established by statute in Delaware in 1984.[2] The Koutoufarises argue that the knowledge, or more precisely lack of knowledge, of the business invitee is an element of recovery concerning which plaintiff has the burden of proof and the application of theories such as contributory negligence or assumption of risk cannot serve to relieve plaintiff of that burden. The issue thus posed is whether § 343A represents a limitation on a landowner's duty which subsists independent of the concept of comparative negligence. Or stated differently, whether knowledge by a business invitee of a hazard on the property is a total bar to recovery or merely serves to reduce recovery.

There is a split of decisional authority on the question of whether the knowledge element under § 343A defines the landowner's duty of reasonable care. The schizophrenic nature of the comments to § 343A have perhaps added to the confusion. For example, comment d provides, in part:

... Such knowledge of the violation [of a duty of care by a possessor of land] is material only in determining whether the visitor is to be charged with contributory negligence, or assumption of risk, in coming in contact with the dangerous condition.

Although this passage implies that the knowledge element is viewed as assumption of risk, comment e suggests a different perspective:

e. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

The question of whether § 343A's apparent espousal of assumption of risk as a bar

---

2. 10 *Del.C.* § 8132 provides:

In all actions brought to recover damages for negligence which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the negligence of the defendant or the combined negligence of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

to recovery has been eroded by the concept of comparative negligence has been the subject of mixed comment in federal cases interpreting § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905(b). These cases present the issue in sharp focus because of Congress' expressed intention to adopt the maritime doctrine of comparative negligence, to the preclusion of the defenses of assumption of risk and contributory negligence, in claims under the Act. H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., U.S.Code Cong. & Admin.News 1972, 4698 at 4704–5.

The Federal Courts of Appeal are in disagreement on the effect of comparative negligence on § 343A, with the Fourth, Fifth and Seventh Circuits following the Second Circuit's lead in *Napoli v. Hellenic Lines, Ltd.,* 2d Cir., 536 F.2d 505 (1976).[3] That case expressed the rationale that,

> [w]here dangers are unreasonable, their obviousness, standing alone, should not necessarily relieve a defendant of all responsibility for their presence. Although the invitee ... may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it.

*Napoli,* 536 F.2d at 508. Or, as the Seventh Circuit describes it,

> ... we read Section 343 together with Section 343A not as providing defenses but as defining when it is negligent to allow the existence of a dangerous condition. Under the Restatement, when the danger is open and obvious and in addition is avoidable in the exercise of ordinary care and therefore the harm is not

foreseeable, it is not negligent to allow the danger to exist.

*Clemons,* 596 F.2d at 750 n. 17. Under this line of authority, the knowledge element of § 343A is a limitation on the defendant's duty of care, and not merely a defense to a charge of negligence. Thus, § 343A remains a viable standard defining a landowner's duty notwithstanding comparative negligence.

The First, Third, Eighth and Ninth Circuits, on the other hand, tend to follow the opinion of an earlier District Court ruling in California, *Gallardo v. Westfal–Larsen & Co. A/S,* N.D.Cal., 435 F.Supp. 484 (1977).[4] That case and the decisions following it rest on the rationale "that sections 343 and 343A are too heavily laden with the prohibited defenses of assumption of the risk and contributory negligence to be followed rigidly as the standard of care owed longshoremen by the vessel under section 905(b)." *Johnson v. A/S Ivarans Rederi,* 1st Cir., 613 F.2d 334, 347 (1980).[5] Thus, the cases following *Gallardo* have rejected § 343A as a viable standard for measuring the duty of a shipowner, or landowner, to the extent it may be raised as an absolute bar to recovery where the plaintiff's conduct is measured under comparative negligence principles.

At the state level, an overwhelming majority of courts have adopted the *Gallardo* approach. Of those state courts which have addressed the issue of whether the principles espoused by § 343A survive the adoption of comparative negligence, only one appears to have answered in the affirmative. *See Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). On the other hand, a number of courts have held that comparative negligence negates the opera-

---

**3.** *See Clemons v. Mitsui O.S.K. Lines, Ltd.,* 7th Cir., 596 F.2d 746 (1979); *Gay v. Ocean Transport & Trading, Ltd.,* 5th Cir., 546 F.2d 1233 (1977); *Anuszewski v. Dynamic Mariners Corp., Panama,* 4th Cir., 540 F.2d 757 (1976).

**4.** *See Miller v. Patton–Tully Transp. Co., Inc.,* 8th Cir., 878 F.2d 1103 (1989); *Johnson v. A/S Ivarans Rederi,* 1st Cir., 613 F.2d 334 (1980); *Rich v. United States,* 3rd Cir., 596 F.2d 541, 551 n. 21 (1979); *Santos v. Scindia Steam Navigation Co.,* 9th Cir., 598 F.2d 480 (1979), *aff'd,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

**5.** The U.S. Supreme Court seems to agree with this conclusion. In the appeal from the Ninth Circuit's decision in *Scindia Steam,* the Court ratifies the thinking of *Gallardo* and stated that Sections 343 and 343A, "while not irrelevant, do not furnish much guidance in cases such as this." *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 168 n. 14, 101 S.Ct. 1614, 1622 n. 14, 68 L.Ed.2d 1 (1981).

tion of the knowledge element in § 343A as a complete bar to liability. *See, e.g., Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989); *Ward v. K Mart Corp.,* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990); *Novotney v. Burger King Corp.,* 188 Mich. App. 705, 470 N.W.2d 93 (1991); *Cox v. J.C. Penney Company, Inc.,* Mo.Supr., 741 S.W.2d 28 (1987) (en banc); *Woolston v. Wells,* 63 Or.App. 7, 663 P.2d 408 (1983), *aff'd,* 297 Or. 548, 687 P.2d 144 (1984); *Donahue v. Durfee,* Utah Ct.App., 780 P.2d 1275 (1975); *O'Donnell v. City of Casper,* Wyo.Supr., 696 P.2d 1278 (1985). Furthermore, an even greater number of courts, while not addressing the precise issue presented here, have held that the rule articulated by § 343A does not limit a landowner's duty to latent dangers, but recognize that a landowner can be liable even for injuries resulting from obvious hazards thus posing a fact question for the jury. *See, e.g., Kremer v. Carr's Food Center, Inc.,* Alaska Supr., 462 P.2d 747 (1969); *Kuykendall v. Newgent,* 255 Ark. 945, 504 S.W.2d 344 (1974); *Friedrich v. Dept. of Transp.,* 60 Haw. 32, 586 P.2d 1037 (1978); *Hammond v. Allegretti,* 262 Ind. 82, 311 N.E.2d 821 (1974); *Hanson v. Town & Country Shopping Center, Inc.,* 259 Iowa 542, 144 N.W.2d 870 (1966); *Williams v. Boise Cascade Corp.,* Me. Supr., 507 A.2d 576 (1986); *Adee v. Evanson,* Minn.Supr., 281 N.W.2d 177 (1979); *Davis v. Gabriel,* Ct.App., 111 N.M. 289, 804 P.2d 1108 (1990); *Callander v. Charleston Doughnut Corp.,* S.C.Supr., 406 S.E.2d 361 (1991); *Mitchell v. Ankney,* S.D.Supr., 396 N.W.2d 312 (1986); *Maci v. State Farm Fire & Casualty Co.,* Ct.App., 105 Wis.2d 710, 314 N.W.2d 914 (1981). Two jurisdictions reach a contrary result. *See, e.g., Casby v. Flint,* Fla.Supr., 520 So.2d 281 (1988); *Kronen v. Richter,* 211 Mont. 208, 683 P.2d 1315 (1984).

Plaintiff argues that her knowledge of the risk or danger in the parking lot is relevant only to the question of whether she assumed the risk, and not to the issue of whether the Koutoufarises owed her a duty of care in the first instance. She maintains that once she established her status as an invitee, the existence of certain

duties on the part of the landowners arose and, while the landowners were entitled to assert her knowledge of the danger, they were required to raise it as an affirmative defense for which they had the burden of proof. Moreover, even when such a defense is established it is not an absolute bar but subject to the ameliorating effect of a comparative negligence instruction.

To a degree, the confusion in this area of the law results from the overlap between the concepts of contributory negligence and assumption of risk. This blurring has been recognized in Delaware decisional law. For example, in *Bib v. Merlonghi,* Del.Supr., 252 A.2d 548 (1969), this Court distinguished between primary assumption of risk ("which refers to those cases where the plaintiff expressly relieves the defendant from all legal duty") and secondary assumption of risk ("a deliberate and unreasonable choice to encounter a risk created by another's breach of duty."). *Id.* at 550. This distinction may have equal pertinence to conduct to which the defense of contributory negligence is applicable. As the *Bib* court noted, "[w]e think it makes little difference in the present case whether the defense is called assumption of risk or contributory negligence or given no title at all; this is one of those cases where the two theories overlap." *Id.*

Although, as this Court recognized in *Bib,* it was not necessary to distinguish between primary and secondary assumption of risk if either constitutes an absolute bar to recovery, with the legislative adoption of comparative negligence the distinction became important. *Bib,* 252 A.2d at 550. In *Fell v. Zimath,* Del.Super., 575 A.2d 267 (1989), the Superior Court addressed the primary-secondary distinction in the context of the comparative negligence statute. Proceeding from *Bib* and adopting the definitions expressed in Prosser and Keeton on the Law of Torts § 68, at 48 (15th ed. 1984)—primary assumption of risk involves the express consent to relieve the defendant of any obligation of care while secondary assumption consists of voluntarily encountering a known unreasonable risk which is out of proportion to

the advantage gained—the court ruled that the latter is totally subsumed within comparative negligence. We agree with this holding as a correct statement of Delaware law.[6]

In our view, adoption of a comparative negligence standard in 1984 manifests a legislative intention from that date to retreat from a system of inflexible and unforgiving rules in favor of evaluation of the plaintiff's conduct on a case-by-case basis. *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1097–98 (1991). If § 343A is interpreted as a duty limiting provision, it retains its character as an inflexible legal rule the sole focus of which is upon whether the plaintiff was in any way culpable in not appreciating the hazard created or permitted by the defendant. Thus, if the plaintiff was aware of the danger, no liability arises on the part of the landowner even though on a comparative basis the plaintiff's error in judgment in not appreciating the risk might be far less blameworthy than defendant's conduct in creating the risk or failing to eliminate it. Such a result is clearly at variance with the legislative intent that, where negligence is reflected in the conduct of both parties, liability, and consequent recovery, be determined proportionately. *Id.*

Our holding that § 343A is not the appropriate standard for defining a landowner's duty to business invitees is limited to situations, where, as here, the plaintiff's alleged assumption of risk is the secondary type. Where the assumption of risk is of the primary type, *i.e.*, a bargained-for, agreed-upon shifting of the risk of harm, a plaintiff's conduct might well constitute a complete bar to recover, as a matter of law, even in a comparative negligence jurisdiction. *See Swagger v. City of Crystal,* Minn.App., 379 N.W.2d 183 (1985). For present purposes, it suffices to rule that § 343A does not define the landowner's duty in this case and the Superior Court correctly declined to instruct the jury concerning it.

## IV

The Koutoufarises next complain that the trial court erroneously instructed the jury regarding wanton and wilful conduct on their part after having previously determined, as a matter of law, that plaintiff could not assert a claim for punitive damages based on such conduct. Plaintiff counters that the instruction in question was not inconsistent with the earlier ruling but appropriately given in an entirely different context.

In her original and amended complaint, plaintiff alleged that defendants' conduct "demonstrated a wilfulness and wantonness, and reckless indifference" and sought punitive damages. In moving for summary judgment on the question of their control of the premises, the defendants additionally asserted that there was insufficient evidence to submit the question of punitive damages to the jury. After review of the extensive discovery record the Superior Court ruled that punitive damages "were not available" to the plaintiff. Applying the standard announced by this Court in *Jardel Co., Inc. v. Hughes,* Del.Supr., 523 A.2d 518 (1987), the court concluded that while defendants "might reasonably have been put on notice of the general criminal conduct occurring in the parking lot," their conduct did not reflect a conscious indifference to a known risk.

At trial, plaintiff requested a jury instruction to the effect that even if it was determined that plaintiff was contributorily negligent, she could nonetheless recover if the jury further found that the defendants' conduct rose to the level of recklessness. The trial court acceded to the request and gave the following instruction:

> However, I instruct you that contributory negligence is not a defense to wanton or reckless conduct, therefore, even

---

6. Although Delaware's adoption of a modified comparative negligence standard permits a jury to apportion liability where both parties are negligent (if the plaintiff's fault did not exceed fifty percent), it did not modify traditional standards of proximate cause. *Culver v. Bennett,* Del.Supr., 588 A.2d 1094 (1991). Thus, assumption of risk, to a level greater than a defendant's primary negligence, may constitute proximate cause sufficient to bar recovery.

if you find the plaintiff was contributorily negligent, if you further find that the defendants acted in a wanton or reckless manner, then your verdict should still be for the plaintiff.

A person acts in a wanton or reckless manner when he or she is aware of and consciously disregards a substantial and unjustifiable risk to the rights or the safety of another.

The Koutoufarises contend that the trial court erred in reintroducing into the instructions a standard of conduct which it had already ruled, as a matter of law, had no application to plaintiff's claim.

 A jury instruction may not be the basis for reversible error if, when read as a whole, it is reasonably informative, not misleading and does not undermine the jury's ability to intelligently perform its duty. *Sirmans v. Penn*, Del.Supr., 588 A.2d 1103 (1991). A party is not entitled to a particular jury instruction but does have the unqualified right to have the jury instructed on a correct statement of the substance of the law. *Culver*, 588 A.2d at 1096. The disputed instruction was not given as a premise for an award of punitive damages. The jury was presented with no evidence concerning defendants net worth and the jury interrogatories did not call for any such award. The instruction in question directly followed the court's instruction on the application of 10 *Del.C.* § 8132 and is not, in itself, an incorrect statement of the law. *See Gushen v. Penn Central Transportation Co.*, Del.Supr., 280 A.2d 708, 710 (1971). When read in conjunction with the earlier instruction on comparative negligence the jury was correctly advised that (1) if plaintiff was contributorily negligent but her negligence was not greater than the defendants' primary negligence she could recover with a diminished award and (2) even if guilty of contributory negligence to a level greater than the defendants, plaintiff could nonetheless recover if defendants conduct was found to be reckless.

While we recognize some inconsistency between the trial judge's pretrial disallowance of punitive damages as a matter of law because the factual record did not support such a claim and permitting the jury to find the same factual predicate at trial, any error was clearly harmless since the jury specifically determined that *no* contributory negligence existed. Thus the jury was not called upon to determine if reckless conduct existed or to apply the instruction which would have permitted recovery in the face of such conduct.

## V

 In their motion for a new trial, repeated on appeal, the Koutoufarises asserted that plaintiff's counsel engaged in improper questioning and impermissible comments. The Koutoufarises first complain that plaintiff's counsel engaged in improper questioning of John Koutoufaris on an irrelevant matter. Specifically, it is claimed that counsel asked John Koutoufaris whether he owned several restaurants and motels in an effort to suggest to the jury that the Koutoufarises were persons of wealth. Since the trial court had earlier ruled that there could be no recovery of punitive damages, the argument runs, introduction of evidence of the Koutoufarises' wealth served no evidentiary purpose and was thus prejudicial.

The Superior Court ruled that the questioning of Mr. Koutoufaris concerning his operation of other businesses was intended to counter the suggestion that Mr. Koutoufaris was an immigrant with limited language skills who could not be expected to be knowledgeable of such things as the lighting requirements in parking lots. We agree with the Superior Court that the questioning was designed to provide evidence of Mr. Koutoufaris' background and experience in the operation of businesses in which parking is an adjunct. Since foreseeability of harm was a consideration in assessing the Koutoufarises' conduct, the information sought was clearly germane. No evidence bearing upon the Koutoufarises' net worth resulted from the questioning and the mere inference of wealth should not bar the receipt of otherwise relevant evidence. D.R.E. 403. We find no abuse of discretion in the trial court's ruling.

■■■■ Similarly, we find no error in the trial court's refusal to grant a mistrial after sustaining an objection to a question asked by plaintiff's counsel of a former BCI employee as to whether Mr. Koutoufaris ever made the statement "waitresses are a dime a dozen." Plaintiff's counsel sought to justify the questioning as illustrative of the reason summer employees were reluctant to complain to Mr. Koutoufaris about working conditions. In sustaining an objection to the statement, the trial court ruled that the question could be asked only if a proper foundation had been established for that line of inquiry through direct questioning of Mr. Koutoufaris. When Mr. Koutoufaris later denied making the statement the matter was not further pursued and the witness not recalled.

The mere asking of an improper question cannot be the basis for a claim of prejudicial error. *Boyd v. Hammond*, Del. Supr., 187 A.2d 413 (1963). In the absence of evidence of bad faith on the part of the questioner, the sustaining of a prompt objection followed by a curative instruction, if warranted, will usually suffice to remedy the impropriety. The prejudicial effect of an objectionable question, or an improper comment by counsel, must be measured in the trial setting. Unless the question itself has introduced an indelible inference which taints the fairness of the trial, a mistrial is not required. The determination of whether a mistrial will be granted by reason of the improper comments of counsel is within the discretion of the trial judge who is best suited to gauge the impact and setting of the statement in question. *Cf. Joseph v. Monroe*, Del.Supr., 419 A.2d 927 (1980). We find no abuse of discretion in the trial court's rulings in this regard. *Eustice v. Rupert*, Del.Supr., 460 A.2d 507 (1983).

■■■■ Finally, the Koutoufarises contend that plaintiff's counsel in his summation to the jury improperly alluded to the Koutoufarises' ownership of other businesses and also suggested that the Koutoufarises' argument of contributory negligence was tantamount to a claim that plaintiff had invited the assault. No contemporaneous objection was made to these comments, although they were included among the grounds for which the Koutoufarises sought a new trial.

Although we believe that in his summation plaintiff's counsel walked the edge of impropriety by attacking the Koutoufarises as uncaring landowners, the failure of opposing counsel to make a contemporaneous objection deprived the trial judge of the opportunity to deal with the problem when it arose. Such inaction is deemed a waiver of any resulting error for appellate purposes. *Weber v. State*, Del.Supr., 547 A.2d 948 (1988). Furthermore, in refusing to grant a new trial the trial judge noted that comments of plaintiff's counsel regarding ownership of other businesses was based on admissible evidence and that counsel's arguments were not otherwise inflammatory. In view of the absence of a contemporaneous objection we find no basis to disturb that ruling.[7]

## VI

■■■ The Koutoufarises' final argument on appeal is that the Superior Court erred in ruling, as a matter of law, that they, along with Keith, had exclusive control of the BCI premises, including the parking lot. Although by benefit of a post-trial ruling Keith was relieved of liability, the case was submitted to the jury with the issue of premises control resolved against the Koutoufarises. The Koutoufarises now contend that the issue of premises control was a factual one for jury determination. In a related argument, the Koutoufarises assert that since the evidence at trial supports a finding that BCI had control of the premises, the plaintiff's exclusive remedy for her injuries was a claim for workmen's compensation. Because the latter assertion, was not specifically raised

---

7. Our review of the record in this case, however, raises a concern over the contentious and often bitter exchanges between counsel for both parties which occurred throughout trial, and is evident in the briefing on appeal. We noted at oral argument, and we repeat here, that an attorney's zeal for his client's interests does not justify engaging in the protracted bitterness between counsel and the mean-spirited innuendo that characterize this record.

below [8] and the trial court did not rule upon it, we would not, in the usual course of events, entertain it on appeal. Supr.Ct.R. 8. To the extent, however, that it raises a claim that the trial court lacked subject matter jurisdiction, it is a matter which the parties, or the appellate court *sua sponte*, may raise at any time. *Estate of Lerman*, Me.Supr., 451 A.2d 640 (1982).

■ The Koutoufarises and Keith first raised the question of whether they, or BCI, had control of the premises in their motion for summary judgment. At that time they argued that they could not be deemed to be in control of the premises, including the parking lot, because they had leased the premises to BCI with a provision requiring BCI to be responsible for all maintenance. In denying summary judgment the Superior Court ruled that the terms of the lease did not foreclose the question of control because its language did not explicitly extinguish the landowner's residual duty. After evaluating the factual record in a summary judgment context, and affording the plaintiff the benefit of all inferences, the court ruled that "a reasonable jury could conclude that the Koutoufarises exercised actual control over the premises and thus, had reason to know of the likelihood of conduct by third persons which could endanger the safety of others." *Dick v. Koutoufaris, et al.*, Del.Super., C.A. No. 88C–NO–114, Gebelein, J., 1990 WL 106193 (July 11, 1990).

At trial, after the conclusion of the evidence, the court ruled as a matter of law that the Koutoufarises had actual control of the property. The court reasoned that because the evidence demonstrated that the Koutoufarises, directly and through their partnership, JOMAR, retained control of maintenance of the property, including lighting, and, in fact, exercised that control to make changes, with reimbursement from BCI, their control was actual.[9] The jury was later instructed to that effect.

On appeal, the Koutoufarises again rely upon their lease with BCI as the basis for their contention that plaintiff's claim is properly assertable only against her employer under workmen's compensation. At a minimum, they argue, the issue of control was a factual one which should have been submitted to the jury under appropriate instructions.

■ Under Delaware law, a lessor/landowner owes a residual duty of care to the invitees of his tenant for protection from the foreseeable acts of third parties. *Jardel*, 523 A.2d at 518. An exception to this rule may exist where the lessor retains no control, in the sense of actual management, of the property. *Craig v. A.A.R. Realty Corp.*, Del.Super., 576 A.2d 688, 696 (1989). To form a basis for the imposition of liability, however, the lessor's control need not be exclusive. *Monroe Park Apartments Corp. v. Bennett*, Del.Supr., 232 A.2d 105 (1967). Joint control with another entity does not preclude liability if the lessor exercised actual control. *Id.* at 108.

■ A lessor/landowner may, through contract, place upon the tenant the primary responsibility for maintenance and control and to that end seek to absolve the landowner of such responsibility. Under the Delaware Landlord Tenant Code a writing

---

8. In their answer to the amended complaint, the defendants, raised as an affirmative defense that plaintiff's claim was "against her employer which precludes this action under 19 *Del.C.* § 2304." This defense was not asserted by defendants in their motion for summary judgment nor was it raised at trial or in any post trial motion.

9. John Koutoufaris testified as follows concerning JOMAR's role:
 Q. What duties and responsibilities does Jomar Enterprises have in connection with the maintenance of the property that it rents or leases to the Blue Coat Inn?

A. The usual. Maintain the property in good standards to be operated and whatever it would be to care for the conduct of business.
Q. I'm sorry. Care for the—
A. Doing business.
Q. What do you mean by that?
A. Good lighting, good parking lot, clean sidewalks from snow, easy communication from—to the restaurant from its—anyplace you park. Maintain the grounds. To keep nice, beautiful place, and, well, the other necessary. . . .
Q. Whose responsibility is this?
A. It's my responsibility to supervise that.

intended to accomplish this shifting of a common law duty must do so clearly and explicitly. 25 *Del. C.* § 5305(b) provides:

(b) The landlord and tenant may agree by a *conspicuous writing* independent of the rental agreement that the tenant is to perform specified repairs, maintenance tasks, alterations or remodeling, ... (emphasis added).

■ The Superior Court ruled that the lease between BCI and the Koutoufarises did not satisfy the statutory standard and we agree. To begin with, clauses which exonerate a party from the consequences of his own negligence are looked upon with disfavor. *Blum v. Kauffman*, Del.Supr., 297 A.2d 48, 49 (1972). Consistent with the statutory standard, language in a lease conveying that intent must be clear and unequivocal. *Id.* In *Blum*, we refused to construe a provision in a lease exonerating a landlord for loss from "theft" as shielding the landlord from responsibility for loss occurring through negligence or burglary. We noted that, in a "lengthy document obviously drawn with great care and expertise," had the drafters wanted to cover other contingencies of loss they would have done so specifically. *Id.*

The *Blum* rationale is even more compelling in the present case. The Koutoufarises stood on both sides of the BCI lease and could have inserted language to suit their respective roles, presumably without bargaining. Although the lease in question is specific as to building maintenance it does not mention safety or security, including lighting, and refers only generally to grounds maintenance. Moreover, there is no effort in the language of the lease to fix exclusive control of the premises with BCI, a result easily achievable given the overlapping roles assumed by the Koutoufarises. The Superior Court was clearly correct in construing the lease as ineffective in purporting to fix exclusive control of the parking lot upon BCI.

■ In view of the failure of the lease to relieve the Koutoufarises of their residual duty as landowners, the focus at trial was upon whether the evidence showed that, in fact, the Koutoufarises exercised actual control. Clearly the evidence demonstrated actual control by the Koutoufarises, primarily through their partnership, JOMAR Enterprises. While the Koutoufarises went to great lengths, apparently for tax reasons, to create three separate entities for ownership, operation and maintenance of the premises, in essence, only the Koutoufarises as individuals determined the nature and extent of security on the premises. Although payment for such items as type and location of shrubbery and lighting ultimately may have come from BCI through reimbursement, those expenditures were dictated by the Koutoufarises directly or through the partnership for whose acts they bear personal responsibility. Ordinarily, disputed questions of control between distinct entities are best reserved for jury determination. But given the common identity of the parties chargeable with premises control in this case, we agree with the Superior Court that the issue of actual control was one of law. The court's ruling that the Koutoufarises had actual control of the parking lot at the time of the injury in question was clearly correct.

■ Our resolution of the control issue renders unnecessary a ruling on the related contention that workmen's compensation provided plaintiff with an exclusive remedy. Because they exercised actual control in their status as landowners the Koutoufarises owed a residual duty to plaintiff as a public invitee. This duty arose irrespective of whether plaintiff was an employee of BCI. The latter relationship simply created the legal justification for establishing her presence on the parking lot as a business invitee. Moreover, the Koutoufarises' actual control of the premises is a sufficient basis for positing a claim by a business invitee even if that control were shared jointly, with another party, arguably BCI. *Blum, supra.* The plaintiff's claim is thus distinct from any remedy available to her under workmen's compensation. Because the Koutoufarises did not file a third party action against BCI, the Superior Court was not called upon, nor are we, to determine the extent to which the

Koutoufarises might seek indemnification from BCI based on any express or implied contractual relationship. *See, Diamond State Telephone Co. v. University of Delaware*, Del.Supr., 269 A.2d 52, 57 (1970). For present purposes, it is sufficient to rule that there is no merit to the claim of lack of subject matter jurisdiction because of the possible existence of a workmen's compensation remedy.

### VII

The plaintiff has cross-appealed from two rulings of the Superior Court. She complains that the court erred in granting summary judgment in favor of the defendants on her claim for punitive damages. She also contends the court usurped the role of the jury in granting judgment n.o.v. in favor of Keith after the jury's finding that he was jointly liable with the Koutoufarises as owners of the property.

■ As previously noted, the Superior Court in granting summary judgment on the claim for punitive damages applied the standard announced by this Court in *Jardel*. It ruled that the defendant landowners did not consciously disregard a known risk that plaintiff, and others similarly situated, would be subjected to an unreasonable risk of harm in the parking lot. This ruling was made after review of the factual record compiled through extensive discovery by both parties. We agree with the Superior Court that while the Koutoufarises may not have been sufficiently sensitive to criminal activity occurring in the parking area, their negligence was of the passive type. Their conduct was not sufficiently egregious to form the basis for the imposition of punitive damages. While we believe that the wiser course may have been to defer a ruling on punitive damages until a full evidentiary showing had been made by plaintiff at trial, the court's granting of summary judgment on this claim is harmless error. Even if the entire trial record is considered, plaintiff did not succeed in establishing the requisite level of conduct on the part of the Koutoufarises to justify submission of other claims for punitive damages to the jury. However

viewed, the evidence does not support a finding that the Koutoufarises "turned their back on a known risk." *Jardel*, 523 A.2d at 531.

■ Finally, we address the trial court's grant of judgment n.o.v. absolving Keith of responsibility for the harm to plaintiff. Plaintiff concedes that we review such a ruling under an abuse of discretion standard. *Storey v. Camper*, Del. Supr., 401 A.2d 458 (1979). The granting of judgment n.o.v., which has the effect of altering a jury verdict should be exercised with caution. Such a decision is appropriate if the trial judge determines that a reasonable person could have come to but one conclusion on the evidence presented. *Eustice v. Rupert*, Del.Supr., 460 A.2d 507 (1983). In contrast to the ruling that, as a matter of law, the Koutoufarises had actual control of the parking lot, the question of Keith's control was submitted to the jury for determination. The trial judge determined, post-trial, that Keith played a marginal role in events which led to the assault on plaintiff. He concluded that Keith had surrendered effective ownership and control of the restaurant property, including the parking area, to the Koutoufarises. It is undisputed that Keith was not a shareholder in BCI nor was he a partner in JOMAR. His sole link to the property was a bare legal interest. Apart from agreeing to the decision to hire a security guard after this incident (for the benefit of his gift shop located on the premises) he played no part in the day-to-day decisions regarding lighting or location of employee parking. In short, he exercised little, if any, actual control and clearly deferred to the Koutoufarises in all matters affecting customers and employees of BCI. We perceive no basis for disturbing the decision granting judgment n.o.v. in favor of Keith.

The judgment of the Superior Court is affirmed as to all issues properly preserved in the appeal and cross-appeal.