SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5256

April 16, 2019

William D. Fletcher, Jr., Esquire
Dianna E. Louder, Esquire
Schmittinger & Rodriguez
414 South State Street
P.O. Box 497
Dover, DE 19903

Colin M. Shalk, Esquire
Casarino Christman Shalk Ransom & Doss
1007 North Orange Street, Suite 1300
P.O. Box 1276
Wilmington, DE 19899

Re:     *Stuart Bozievich v. Marc Moreau, d/b/a Wrenches Auto
        Repair, Marc Moreau, Individually, Sherri Moreau,
        Individually, and Jonathan J. Plump*
        <u>Civil Action No. S16C-12-004 ESB</u>

Dear Counsel:

This is my decision on Defendant Jonathan J. Plump's Motion for Summary

Judgment on all claims against him made by Plaintiff Stuart Bozievich for damages

to Bozievich's classic 1974 Corvette automobile.  The damages were sustained when

a fire started in an electrical outlet and heavily damaged Wrenches Auto Repair

where Bozievich's Corvette was undergoing repairs.  Defendants Marc and Sherri

Moreau are the owners and operators of Wrenches Auto Repair.  Plump is the owner

of the property where the business was located.  The Moreaus leased the space for

Wrenches from Plump.

There are two claims subject to Plump's motion. The first claim is for a breach of a bailment agreement for the Corvette between Bozievich and the Moreaus. Plump argues that he was not a party to the bailment agreement and that he cannot be held liable for its breach. Bozievich does not appear to dispute this argument and has failed to provide any support for this claim as it pertains to Plump.

The second claim against Plump is based on his alleged negligence in failing to properly inspect the electrical system in the auto repair shop. Bozievich argues that Plump, as the landowner, owed him a duty to inspect the electrical system to ensure that it was safe, and by failing to do so is responsible for the damages caused by the fire when the electrical system malfunctioned. Plump counters by pointing out that Bozievich has failed to present facts necessary to establish the existence of a duty and what that duty would have entailed. Further, Plump posits that there is a lack of evidence as to the specific cause of the fire sufficient to support a finding of proximate cause.

I have decided that Plump is entitled to summary judgment in his favor for all claims against him. I find that as a nonparty he is not liable for the breach of the alleged bailment agreement between Bozievich and the Moreaus. I have also concluded that while the existence and scope of any duty to inspect the electrical system is relatively murky, it is clear that there is no way, even viewing the evidence in a light most favorable to Bozievich, to determine the actual cause of the fire at

2

this point in time. This renders a determination of the proximate cause of Bozievich's damages impossible and makes summary judgment on the negligence claim appropriate.

## STATEMENT OF FACTS

Defendants Marc and Sherri Moreau (the "Moreaus") operated Wrenches Auto Repair ("Wrenches"), an automobile repair shop located at 1958 Bloomfield Drive, Milford, Delaware (the "Property"). Defendant Jonathan Plump ("Plump") purchased the Property in 2011, consisting of an approximately 4,000 square foot pole building and surrounding acreage. The Moreaus had been operating Wrenches on the Property for some time prior to Plump's purchase, and Plump initially agreed to honor the terms of their existing lease agreement with the previous owner. On January 1, 2014, Plump and the Moreaus entered into a new lease agreement (the "Lease Agreement") for a three-year term.[1] The Lease Agreement accounted for 3,000 square feet of the building which housed Wrenches. Plump retained the remaining portion of the building to use for storage.

Plaintiff Stuart Bozievich ("Bozievich") is a vintage car enthusiast who entered into an agreement with the Moreaus to repair a classic 1974 Corvette automobile (the "Corvette"). Unfortunately, on December 6, 2015, a fire occurred at Wrenches while the Corvette was located within the building. As a result of the

---

[1] Defendant's Motion for Summary Judgment, Ex. F ("Def. Motion").

3

damages sustained in the fire, the Corvette was deemed a total loss. An inspection conducted by the Delaware State Fire Marshal determined that the fire most likely started when a failure occurred within an electrical socket located on the rear interior wall of Wrenches.[2]

Bozievich brought suit against the Moreaus and Plump for breach of a bailment agreement and negligence in the amount of $25,500.00 for damages sustained by the Corvette. Bozievich has already obtained default judgments for his claims against the Moreaus. All that remains for my consideration are his claims against Plump. Plump has filed a Motion *in Limine* for the exclusion of testimony regarding the value of the Corvette. Plump has also moved for summary judgment on all claims against him in this matter.

## STANDARD OF REVIEW

This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[3] Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[4] The Court views the evidence in a light most favorable to the nonmoving party.[5] Where

[2] Def. Motion, Ex. D.
[3] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[4] *Id*. at 681.
[5] *Id*. at 680.

4

the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.[6] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of the case, then summary judgment must be granted.[7] If, however, material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is not appropriate.[8]

## DISCUSSION

### 1) Breach of Bailment Agreement

The Complaint alleges that Bozievich entered into a bailment agreement with the Moreaus for repairs to be made to the Corvette. Bozievich asserts that the damage sustained by the Corvette in the fire resulted in a breach of said agreement. It is somewhat ambiguous from the Complaint whether Bozievich intended to include Plump with the Moreaus in this claim.

In any event, Plump has moved for summary judgment on any breach of contract claims that may be against him. Plump points out that he was not a party to

---

[6] Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[7] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991), *cert. den.*, 112 S. Ct. 1946 (1992); *Celotex Corp.*, 477 U.S. 317 (1986).
[8] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

5

the alleged contract. I agree with him. Bozievich has failed to show that Plump was a party to the alleged bailment agreement and has not provided any argument as to why Plump should be held liable for its breach. Accordingly, I find that Plump is entitled to summary judgment in his favor on any breach of contract claims arising from the alleged bailment agreement.

## 2) Negligence

Bozievich's remaining theory of liability hinges on Plump's alleged negligence in failing to inspect the building's electrical system. In general, the Court will decide the element of duty in a negligence claim as a matter of law.[9] In Delaware, a landowner owes a general duty to exercise reasonable care in keeping the premises safe for business invitees.[10] This includes making safe any dangerous condition on the land which the landowner either knows about or should discover upon a reasonable inspection of the property.[11] Delaware courts have recognized that a landowner may cease to have this duty in certain situations where the owner relinquishes actual control and possession of the property to another entity.[12]

---

[9] *Trabaudo v. Kenton Ruritan Club, Inc.*, 517 A.2d 706, 707 (Del. Super. 1986).
[10] *Hamm v. Ramuno*, 281 A.2d 601, 603 (Del. Super. 1971).
[11] *Id.*
[12] *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 695-96 (Del. Super. 1989), *aff'd* 571 A.2d 786 (Del. 1989).

6

Additionally, a landowner may shift the responsibility for maintenance of a property through clear and explicit language in a lease contract.[13]

The current case presents several challenges in ascertaining both the existence and the extent of Plump's duty with regard to the maintenance of the electrical system on the Property. First, the point of failure in the electrical system occurred within the Wrenches portion of the pole building, and the Moreaus had possession and control over this portion for the entire duration of Plump's ownership of the Property prior to the 2015 fire. However, Plump retained possession and control over approximately a quarter of the building in which he stored supplies for a separate business.

Second, the Lease Agreement states that the Moreaus are responsible for any maintenance and repairs of the electrical system. While I believe this clearly and explicitly evidences the intent of the parties to shift this burden, I also realize there may be room for argument on whether this provision sufficiently "stands out" enough to satisfy the legal standard as established in Delaware.

Third, assuming *arguendo* that Plump did owe a duty to inspect the electrical system, it is difficult to determine what kind of inspection would be reasonable under the circumstances here. Bozievich asserts the relative ease with which an electrician, equipped with certain specialized tools, could have conducted a thorough inspection

---

[13] *Koutoufaris v. Dick*, 604 A.2d 390, 402 (Del. 1992).

of the system. I am skeptical that the record supports the reasonableness of requiring an expert inspection of the electrical system of a simple pole building absent some indication of a potential problem. Bozievich's attempt to justify the necessity of such an inspection with the fact that a failure eventually occurred smacks of hindsight bias and is unconvincing.

Given the uncertainties present in the issues outlined above I decline to issue summary judgment on Bozievich's negligence claim based on the element of duty. However, this claim also runs into a hurdle with the proximate cause element. Plump has challenged the claim on this basis, relying on the Fire Marshal's report to highlight the lack of evidence that an inspection of the electrical system would have prevented the fire. I agree with Plump on this issue. The Fire Marshal's report only indicates a probable hypothesis as to the *origin* of the fire (i.e. the electrical outlet). The Marshal did not conduct any tests to determine what went wrong with the outlet to *cause* the fire. At the current stage it would be impossible to determine the actual cause of the fire and – most relevant here – whether an inspection would have revealed the issue. While it is possible that the issue could have been determined by an electrical inspection at some time prior to the fire and rectified, it is also possible that the malfunction was simply a spontaneous and unforeseeable failure. Which possibility occurred here is now inherently unknowable. This is an indisputable fact and precludes a determination of the proximate cause of the fire and the damages

8

sustained by Bozievich. Therefore, I find that Plump is entitled to summary judgment on the negligence claim in his favor.

## CONCLUSION

Defendant Jonathan J. Plump's Motion for Summary Judgment is hereby granted.[14]

Very truly yours,

E. Scott Bradley

ESB/jv/jwc

cc:   Prothonotary

FILED PROTHONOTARY
SUSSEX COUNTY
2019 APR 16 P 2: 50

---

[14] My decision here renders Plump's pending Motion *in Limine* for the exclusion of testimony with regard to the value of the Corvette moot.

9