# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEWARD L. NORTHAN, JR., | ) | |
| | ) | C.A. No. S23C-03-006  CAK |
| Plaintiff, | ) | |
| | ) | TRIAL BY JURY OF |
| v. | ) | TWELVE DEMANDED |
| | ) | |
| KELLY THOMAS and | ) | |
| RUSSELL TRAVIS HOVATTER, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  May 30, 2024
Decided: June 12, 2024

*Defendants' Motions for Summary Judgment
under Delaware Superior Court Civil Rule 56*

**GRANTED**

## <u>MEMORANDUM OPINION AND ORDER</u>

Patrick C. Gallagher, Esquire, Jacobs & Crumplar, P.A., 750 Shipyard Drive, Suite 200, Wilmington, DE 19801, Attorney for Plaintiff.

Donald M. Ransom, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., 1000 N. West Street, Suite 1450, Wilmington, DE 19899, Attorney for Defendant Kelly Thomas.

Erin K. Radulski, Esquire, Law Office of Dawn L. Becker, 200 Continental Drive, Suite 401, Newark, DE 19713, Attorney for Defendant Russell Travis Hovatter.

**KARSNITZ, R. J.**

Sunday, March 7, 2021 was a tragic day for all the parties to this wrongful death litigation. A collision occurred when Steward L. Northan, III ("Decedent"), the son of Steward L. Northan, Jr. ("Plaintiff"), was operating a racing motorcycle at a speed of approximately 140 miles per hour southbound on Route 13 near Delmar, Delaware and collided with the right rear of a vehicle that co-defendant Kelly Thomas ("Thomas") was operating as she crossed over Route 13. Co-defendant Russell Travis Hovatter ("Hovatter") was traveling at approximately 94 miles per hour on the same roadway and in the same direction as Decedent, and did not strike any other vehicle. (Thomas and Hovatter shall be collectively referred to as "Defendants"). The speed limit on Route 13 is 55 miles per hour. The Thomas vehicle and the lead up to the collision were caught on video, and because a fatality was involved, the Delaware State Police Crash Investigation Unit conducted an accident reconstruction and determined the above-referenced facts from the video and witness accounts, as described below. Initially, Decedent's motorcycle was farther from the Thomas vehicle than the Hovatter vehicle, but Decedent's motorcycle overtook the Hovatter vehicle before striking the Thomas vehicle. Using the video and other information, the reconstruction determined that

---

[1] The parties agreed to stipulate to these facts solely for purposes of the Motion for Summary Judgment, even though discovery has not been completed in this case, so that I could consider the single potentially dispositive issue of contributory recklessness. They did not waive their rights to develop and dispute other facts, such as Thomas' drinking and potential drag racing between Decedent and Hovatter, should I deny the Motion for Summary Judgment.

when Thomas began to pull out, Decedent's motorcycle was over ¼ of a mile away from the Thomas vehicle, but at his speed Decedent's motorcycle covered twice the distance a vehicle would cover traveling at 70 miles per hour.

Kayla Fleming ("Fleming"), who knew Decedent, was a passenger in the rear passenger seat of the Hovatter vehicle. She saw and heard Decedent's motorcycle from behind the Hovatter vehicle accelerating from a slower speed to full throttle. She saw Thomas' vehicle start to cross the road and noted that Decedent's motorcycle was quite some distance behind them and was not going that fast when Thomas began to pull out. After Thomas started to pull out, Decedent's motorcycle suddenly accelerated to full throttle. Fleming later acknowledged that Decedent had been doing "pulls" before the collision. She described a "pull" as going from a dead stop to full throttle to get from point A to point B in the shortest amount of time possible. She estimated Decedent's speed at somewhere between 130 and 150 miles per hour, if not more, at the time of the collision.

Lynn Twilley ("Twilley") was behind the Thomas vehicle and testified that Thomas was almost three quarters of the way across the southbound lanes of Route 13 before Decedent's motorcycle suddenly appeared. Twilley observed Decedent traveling in the fast lane at excessive speed and taking no evasive action, clipping the left corner of the rear bumper of Thomas' vehicle.

Thomas acknowledged to police that she had consumed beer earlier in the day, but by the time police tested her, she was under the legal blood alcohol limit and was not charged.

## Procedural Background

Plaintiff filed his wrongful death Complaint on March 7, 2023 alleging negligence and negligence *per se* against Defendants. Thomas filed her Answer and a Crossclaim against Hovatter on April 5, 2023. Hovatter filed his Answer and a Crossclaim against Thomas on June 21, 2023. Thomas filed her Answer to Hovatter's Crossclaim on July 6, 2023.

On January 30, 2024, Thomas filed a Motion for Summary Judgment against Plaintiff. Plaintiff filed his Response on March 18, 2024., and Thomas filed her Reply on March 28, 2024.

On April 10, 2024, in an irregular pleading, Hovatter filed his Response to Thomas' Motion for Summary Judgment, in which he essentially rode on the coattails of Thomas' Motion only with respect to the issue of contributory recklessness; i.e., if I should decide that in Delaware contributory recklessness acts as a bar to Plaintiff's recovery, then I should grant summary judgment to both Defendants. On May 1, 2024, Thomas filed her Response to the effect that, should I deny Thomas' Motion for Summary Judgement, Hovatter should also be denied Summary Judgment, because Hovatter's pleading was presented as a responsive pleading and was not properly submitted or noticed as a motion for summary

4

judgment, and that discovery on the issues raised by Hovatter was incomplete. Similarly, on May 21, 2024, Plaintiff opposed Hovatter's motion for summary judgment as it was not filed as such or properly noticed.

On May 30, 2024, I held oral argument on the Motion for Summary Judgment on the issue of contributory recklessness.[2] This is my decision on the Motion for Summary Judgment.

## Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a motion for summary judgment, I view the facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party.[4] Once the moving party establishes that there are no material factual issues in dispute, the non-moving party bears the burden of demonstrating a material factual issue by offering admissible evidence.[5]

## Contributory Recklessness

The legal issue on which this Motion turns is whether, under Delaware law,

---

[2] The facts raise the issue of primary assumption of the risk, which the parties raised in the briefing. At oral argument, Defendants indicated that they were not relying on any issues of assumption of the risk, and I should not address it. I will not. In addition, the parties raised the issue of intervening/superseding cause in the briefing, but indicated at oral argument that I should not address it, and I will not.

[3] Del. Super. Civ. R. 56(c); *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979).

[4] *DiOssi v. Maroney,* 548 A.2d 1361, 1362 (Del. 1988).

[5] Del. Super. Civ. R. 56(e); *Phillips v. Del. Power & Light Co.,* 216 A.2d 281, 285 (Del. 1966).

contributory recklessness by Decedent is a complete bar to recovery by Plaintiff against Defendants for negligence (as Defendants argue), or whether contributory recklessness has been abrogated by the Delaware comparative negligence statute,[6] which derogated the prior common law of contributory negligence (as Plaintiff argues). If the former, the next question is whether, on the stipulated facts, Decedent's conduct was so egregious that it constitutes recklessness as a matter of law, and no reasonable juror could find otherwise, thereby allowing me to grant summary judgment and take that factual determination away from the jury.

Under Delaware common law, contributory recklessness operates as a complete bar to recovery for negligence.[7] Contributory recklessness exists when

> a plaintiff, with no intent to cause harm, performs an act which is so unreasonable and dangerous that he either knows or should have known that there would be an "eminent likelihood of harm" that may result.[8]

Stated differently, "[a] plaintiff who engages in some overt act that recklessly exposes himself to a known danger is guilty of contributory wantonness."[9] Any finding to that effect constitutes a complete defense.[10]

---

[6] 10 *Del.* C. § 8132.

[7] *Staats v. Lawrence,* 576 A.2d 663 (Del. Super. 1990), *aff'd,* 582 A.2d 936 (Del. 1990) (UNPUBLISHED ORDER); *Wagner v. Shanks,* 194 A.2d 70, 78 (Del. 1963); *Gushen v. Penn Central,* 280 A.2d 708 (Del. 1971).

[8] *Staats,* 576 A.2d 663 at 667-8 (citing *Gushen,* 280 A.2d at 710).

[9] *Id.*

[10] *Gushen,* 280 A.2d at 710, citing RESTATEMENT OF THE LAW (SECOND) TORTS § 482(2) ("[C]ontributory recklessness is a good defense to an action based on recklessness.") RESTATEMENT OF THE LAW (SECOND) TORTS § 503(3) ("[A] plaintiff whose conduct is in reckless disregard of his own

I can find nothing in the Delaware comparative negligence statute that negates the common law doctrine of contributory recklessness. It provides:

> In all actions brought to recover damages for *negligence* which results in death or injury to person or property, the fact that the plaintiff may have been contributorily *negligent* shall not bar a recovery by the plaintiff or the plaintiffs legal representative where such *negligence* was not greater than the *negligence* of the defendant or the combined *negligence* of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of *negligence* attributed to the plaintiff.[11]

Of course, prior to enactment of the comparative negligence statute, under Delaware common law Plaintiff's one percent contributory negligence was a complete bar to recovery.[12]

There are at least two reasons why I rely on the statutory language and do not give the statute a more liberal, expansive reading as suggested by Plaintiff. First, the comparative negligence statute is clear on its face in addressing comparative negligence only, with the words "negligent" or "negligence" mentioned six times in the statute and with no mention of contributory recklessness or willful, wanton, or reckless

---

safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm.").

[11] 10 *Del.* C. § 8132 (emphasis supplied)

[12] *Helm v. 206 Massachusetts Avenue, LLC,* 107 A.3d 1074, 1078 (Del. 2014) (prior to enactment of comparative negligence statute, any degree of contributory negligence operated as complete bar; enactment of comparative negligence statute changed common law rule).

conduct. A statute clear on its face should be enforced as written. Had the General Assembly intended to abrogate the common law of contributory recklessness, it would have been easy enough for it to do so. Negligence and recklessness involve different levels of culpability, proof, and legal consequences. If the General Assembly intended to abrogate the common law of contributory recklessness, it would have done so expressly. It did not, and therefore the common law of contributory recklessness remains intact.

Second, under Delaware law, statutes in derogation of common law must be strictly construed.[13] To the extent I have to interpret the statute, I construe it strictly to exclude any reference to recklessness.[14]

Plaintiff argues that the comparative negligence statute should be construed liberally and broadly to give full effect to the "self-evident intent of the remedial legislation."[15] But liberal construction has its limits. As our Supreme Court has observed:

> It is well-settled that unambiguous statutes are not subject to judicial interpretation. "If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words." Accordingly, the first step in any

---

[13] *Gibson v. Keith,* 492 A.2d 241,247 (Del. 1985) (strict rather than liberal construction of legislation in derogation of the common law is the rule); *Colonial School Bd. v. Colonial Affiliates, NCCEA/DSEA/NEA,* 449 A.2d 243,247 (Del. 1982) (axiomatic that statute in derogation of common law strictly construed); *Mumford. Robinson,* 231 A.2d 477,479 (Del. 1967) (auto guest statute in derogation of common law strictly construed).

[14] The legislative history of the statute sheds no light on this question.

[15] Citing *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1256 (Del. 2011).

statutory construction requires [a Court] to examine the text of the statute to determine if it is ambiguous. Under Delaware law, a statute is ambiguous if: first, it is reasonably susceptible to different conclusions or interpretations; or second, a literal interpretation of the words of the statute would lead to an absurd or unreasonable result that could not have been intended by the legislature.[16]

The Delaware Supreme Court observed that, while Delaware's adoption of comparative negligence changed the common law, "the precise and unambiguous language of [the statute] does not reflect any legislative intent to change Delaware's historic common law determination of proximate cause …"[17] Because the comparative negligence statute is a statute in derogation of common law, and clearly and unambiguously speaks only of negligence, its meaning cannot be twisted to include recklessness, "a different type of conduct akin to the intentional infliction of harm."**[18]**

*Koutoufaris v. Dick*[19] presented the reverse of the parties' posture in this case: plaintiff asserted that defendants were reckless, and defendants argued that plaintiff was contributorily negligent. The trial court gave a jury instruction to the effect that plaintiff could still recover even if contributorily negligent if it found defendants acted recklessly.[20] On appeal, our Supreme Court found the jury instruction to be a correct

---

[16] *Leatherbury v. Greenspun,* 939 A.2d 1284, 1288 (Del. 2007) (footnotes omitted).
[17] *Culver v. Bennett,* 588 A.2d 1094, 1098 (Del. 1991).
[18] *Sheehan* at 1256 n. 36.
[19] 604 A.2d 390 (Del. 1992).
[20] *Id.* at 398-399.

statement of the law.[21] This observation by the Court is significant because it is a clear expression that "recklessness" falls outside of the comparative negligence statute.

The United States District Court for Delaware cited *Koutoufaris* for the proposition that, under Delaware law, if defendant's conduct is reckless, the defense of comparative negligence does not apply.[22] This same principle applies if, as in this case, Plaintiff's conduct is reckless.

In this case, it undisputed that Decedent was operating his motorcycle at approximately 140 mph just prior to the collision. Decedent's speed was reckless as a matter of law. For example, climbing onto the roof of a moving car has been deemed to constitute recklessness or wantonness as a matter of law.[23] Decedent demonstrated a reckless disregard for his own safety as well as the safety of others, and in doing so was contributorily willful, wanton, and reckless. Under Delaware law, anyone who voluntarily exposes himself to a known and reckless danger is guilty of contributory recklessness, and contributory recklessness operates as a complete bar to Plaintiff's claims.[24] Accordingly, Defendants are entitled to summary judgment as a matter of law.[4]

---

[21]*Id.* at 399.

[22]*O'Brien v. Delaware Olds, Inc.,* 833 F. Supp. 447, 449 n.3 (D. Del. 1993). *See also Russo v. Zeigler,* 67 A.3d 536, 541 (Del. Super. 2013) (Delaware comparative negligence statute is narrowly construed; application is limited to actions based in negligence and therefore does not apply to strict liability dog bite cases).

[23]*Staats,* 582 A.2d 936, 1990 WL 168242 (Del. 1990) (UNREPORTED ORDER).

[24]*Staats,* 576 A.2d at 665.

Indeed, even if I were to find that contributory recklessness had been subsumed within the comparative negligence statute, and therefore the case were to be submitted to the jury for a comparative negligence determination, in my view for purposes of summary judgment this is one of those rare cases where no reasonable juror could conclude that Defendants' negligence, if any, exceeded the extreme recklessness of Decedent.[25]

## Conclusion

For the reasons discussed above, Defendants' Motions for Summary Judgment are **GRANTED.**

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz
Craig A. Karsnitz

cc: Prothonotary

---

[25] See, e.g., *Trievel v. Sabo,* 714 A.2d 742, 745-746 (Del. 1998).