Joseph McCORMICK and Carolyn McCormick, as Parents and Next Friends of Madeline L. McCormick, a minor, Plaintiffs,

v.

Joseph HODDINOTT and Adele Hoddinott, Defendants.

C.A. No. 03C–11–256 RRC.

Superior Court of Delaware, New Castle County.

Submitted: Sept. 14, 2004.
Decided: Dec. 8, 2004.

Richard A. DiLiberto, Young, Conaway, Stargatt & Taylor, L.L.P., Wilmington, DE, for Plaintiffs.

Robert K. Pearce, Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Defendants.

## OPINION

COOCH, J.

## I. INTRODUCTION

Before this Court are three motions filed by Madeline L. McCormick ("minor Plaintiff") through her parents Joseph McCormick and Carolyn McCormick (collectively "Plaintiffs"): 1) a motion to strike Defendants' affirmative defense of 25 *Del. C.* § 1501, the "premises guest statute," 2) a motion to strike Defendants' affirmative defense of assumption of risk, and 3) a motion that seeks to impose upon Defendants a rebuttable presumption that minor Plaintiff was incapable of negligence.

Minor Plaintiff was seven years, seven and a half months old in December 2001 when she was bitten, while on Defendants' property, by Defendants' dog. Plaintiffs allege that the injuries to minor Plaintiff

"resulted from the negligent conduct of [Defendants]" in that Defendants violated 7 *Del. C.* § 1711, Delaware's dog bite statute.[1]

Joseph Hoddinott and Adele Hoddinott ("Defendants") assert that they have no liability to minor Plaintiff because she "teas[ed], torment[ed] or abus[ed] the dog." Defendants assert three affirmative defenses, two of which are pertinent to these motions. The first affirmative defense asserted is that "[t]he action is barred by the Premises Guest Statute 25 *Del. C.* § 1501." The second affirmative defense asserted is that "[t]he minor plaintiff was contributorily negligent in that she: (a) [t]eased, tormented, or abused the dog; (b) [a]ssumed the risk of injury; (c) [f]ailed to use due care for her own safety."

There is a factual dispute as to what precipitated the attack by Defendants' dog. Plaintiffs contend that Defendants' dog bit minor Plaintiff while she was petting the dog. Defendants contend that minor Plaintiff jumped on or "body slammed" the dog and provoked the attack.

## II. PLAINTIFFS' "MOTION TO STRIKE THE AFFIRMATIVE DEFENSE OF THE PREMISES GUEST STATUTE."

### A. Contentions of the Parties.

Plaintiffs argue that 7 *Del. C.* § 1711, the dog bite statute, supersedes 25 *Del. C.* § 1501 and that the affirmative defense otherwise afforded by § 1501, the premises guest statute, should be stricken from Defendants' answer. Plaintiffs assert that the subsequently enacted § 1711 imposes strict liability on a dog owner for injuries caused by a dog owner's dog. Plaintiffs argue that, in contrast, § 1501 imposes potential liability for any number of types of injuries that could occur to an individual on someone else's property. Plaintiffs argue that if two statutes conflict, then a statute that is more specific, such as § 1711, should prevail over a more general statute, such as § 1501.

Defendants, however, respond that, irrespective of the dog bite statute, the premises guest statute bars recovery. Defendants argue that the two statutes are not in conflict because the dog bite statute does not impose any liability if a person had "teas[ed], torment[ed], or abus[ed] [a] dog." Defendants argue that if the factual dispute about whether minor Plaintiff "teas[ed], torment[ed], or abus[ed] the dog" is ultimately resolved in Defendants' favor (i.e., the minor Plaintiff is found to have "teas[ed], torment[ed] or abus[ed] the dog" so that the dog bite statute does not impose liability) then the premises guest statute at that point will govern Plaintiffs' claim. Since Plaintiffs have not alleged "intentional," "wilful" or "wanton" behavior on the part of Defendants, Defendants assert that judgment as a matter of law will then have to be awarded in their favor.

### B. The dog bite statute supersedes the premises guest statute.

The issue before this Court in Plaintiffs' motion to strike is whether the dog bite statute supersedes the premises guest statute such that Defendants are precluded from asserting the affirmative defense of the premises guest statute. "Motions to strike are not favored and are granted sparingly, and then only if clearly warranted, with doubt being resolved in favor of the pleading."[2]

---

1. Plaintiffs' Complaint at ¶ 4.

2. *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 660 (Del.Super.1985).

The dog bite statute, 7 *Del. C.* § 1711, provides:

> The owner of a dog is liable in damages for any injury, death or loss to person or property that is caused by such dog, unless the injury, death or loss was caused to the body or property of a person who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting or abusing the dog.

The premises guest statute, 25 *Del. C.* § 1501, provides:

> No person who enters onto private residential or farm premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the wilful or wanton disregard of the rights of others.

Prior to the enactment of the dog bite statute in 1996, the premises guest statute would have applied to a dog bite that occurred while the plaintiff was on the dog owner's land.[3] The dog bite statute was undoubtedly enacted to specifically address a type of incident, a dog bite, which was previously only covered, in general terms, by the premises guest statute.

This Court has recently held 7 *Del. C.* § 1711 is the controlling statute when it conflicts with 25 *Del. C.* § 1501.[4] In *Bemiller v. Rodriguez,* this Court found that the dog bite statute and the premises guest statute are not mutually exclusive; however, to the extent that there is any overlap, then the dog bite statute supersedes the premises guest statute.[5] The *Bemiller* Court noted that the dog bite statute was enacted fifteen years after the premises guest statute. The Delaware Supreme Court has held that

> when the General Assembly enacts a later statute in an area covered by a prior statute, it has in mind the prior statute and therefore statutes on the same subject must be construed together so that effect is given to every provision unless there is an irreconcilable conflict between the statutes, in which case the later supersedes the earlier.[6]

This Court finds *Bemiller* controlling. Defendants argue that if the factual dispute about whether minor Plaintiff "teas[ed], torment[ed] or abus[ed] the dog" is resolved in their favor (i.e. the minor Plaintiff is found to have "teas[ed] torment[ed] or abus[ed] the dog" so that the dog bite statute does not impose liability) then the premises guest statute will govern Plaintiffs' claim. Defendants assert that because the premises guest statute only imposes liability for actions that were "intentional on the part of the owner or occupier or [were] caused by the wilful or wanton disregard of the rights of others" and were not merely negligent, that they

3.  *Richmond v. Knowles,* 265 A.2d 53 (Del.Super.1970) (holding that "[a] relatively new statute [a previous version of the premises guest statute] defines the liability of an occupier of land for injuries caused by [the land owner's dog]").

4.  *Bemiller v. Rodriguez,* 2000 WL 1611085 *3, 2000 Del.Super. Lexis 363 *4 (holding that "[b]ecause the dog bite statute is more specif-

ic and recent than the guest premises statute, it will control should the two collide").

5.  *Bemiller,* 2000 WL 1611085 *3, 2000 Del.Super. Lexis 363 *4.

6.  *State of Delaware v. Minner,* 448 A.2d 227, 229 (Del.1982).

would be entitled to a verdict in their favor.

However, there is no need for the Court to await the factual resolution (presumably by a jury) of whether minor Plaintiff "teas[ed], torment[ed] or abus[ed] the dog" before allowing the finder of fact to then consider if the premises guest statute applies. The *Bemiller* Court explained that

[w]here a person is bitten by a dog while on the property of the animal's owner, these two statutes may conflict. If the person bitten is classified as a trespasser, the dog bite statute will not apply and there is no difference. Where, however, the individual is not a trespasser, these two statutes diverge. The dog bite statute would make the dog owner, who is also the landowner, strictly liable for the tort that occurs on the property. Contrarily, the guest premises statute would permit liability only for intentional or wilful and wanton acts.[7]

Defendants' reasoning is if the dog bite statute does not apply because a defendant is found to have "teas[ed], torment[ed] or abus[ed] the dog," that the premises guest statute applies instead. A defendant could then be found liable for negligence under the dog bite statute (by "teasing, tormenting or abusing the dog") but be relieved of that negligence by the premises guest statute if such action did not amount to an "intentional," "wilful" or "wanton" act. This is not a rational reconciliation of the two statutes. This Court again holds, as in *Bemiller*, that 7 *Del. C.* § 1711 supersedes 25 *Del. C.* § 1501 as to the potential liability of a property owner whose dog bites an individual while that individual is on the dog owner's property.

For the foregoing reasons, this Court **GRANTS** Plaintiffs' motion to strike the

affirmative defense of the premises guest statute from Defendants' answer.

## III. PLAINTIFFS' "MOTION TO STRIKE AFFIRMATIVE DEFENSE OF ASSUMPTION OF RISK."

### A. Contentions of the Parties.

Plaintiffs argue that Defendants' affirmative defense of assumption of risk should be stricken because assumption of risk is no longer an available defense in Delaware given the adoption of the comparative negligence statute. Plaintiffs assert that Defendants instead may potentially rely only on the comparative negligence statute, 10 *Del. C.* § 8132. Plaintiffs argue that the General Assembly, by enacting the comparative negligence statute, replaced the common law defense of assumption of risk. Plaintiffs further argue that assumption of risk, to the extent that it has survived § 8132, has been subsumed within the comparative negligence statute.

Defendants, however, argue that assumption of risk "remain[s] a viable defense to a negligence action" and that "assumption of the risk, in and of itself, would not completely bar recovery as previously had been the case" (prior to the adoption of the comparative negligence statute).[8] Defendants assert that minor Plaintiff was contributorily negligent in that she "teas[ed], torment[ed] or abus[ed] the dog" such that she provoked the dog's attack upon her, and that her alleged "assumption of the risk" (by interacting with the dog) "[was] a 'reflection' of her own contributory negligence [and that] it would tend to reduce the amount of any award that Plaintiffs may receive, or completely

---

7. *Bemiller*, 2000 WL 1611085 *2, 2000 Del.Super. Lexis 363 *5–6.

8. Defendants' Response to Motion to Strike at ¶¶ 1, 3.

bar recovery if Plaintiffs' fault exceeded fifty percent."[9]

### B. The comparative negligence statute has subsumed "secondary" assumption of risk as a separate affirmative defense.

The issue before this Court is whether the affirmative defense of assumption of risk is now subsumed by 10 *Del. C.* § 8132 such that it should be stricken from Defendants' answer. "Motions to strike are not favored and are granted sparingly, and then only if clearly warranted, with doubt being resolved in favor of the pleading."[10] Notably, Plaintiffs do not seek to strike Defendants' other contributory negligence defenses that minor Plaintiff "teas[ed], torment[ed] or abus[ed] the dog" or that minor Plaintiff failed to use due care for her own safety.

This Court explained in *Fell v. Zimath* that

> Modern tort law recognizes that assumption of risk may fall into different categories with different consequences. One category is referred to as express or primary assumption of risk, which involves express consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.... The result is that the defendant is relieved of legal duty to the plaintiff; and being under no legal duty, he cannot be charged with negligence.

> A separate category of assumption of risk, which carries different consequences referred to as secondary assumption of risk, is where the plaintiff's conduct in encountering a known risk may in itself be unreasonable, because the danger is out of proportion to the advantage which he is seeking to obtain—as where, with other transportation available, he elects to ride with a drunken automobile driver, or dashes into a burning building to save his hat. In cases such as these, his conduct is a form of contributory negligence, in which the negligence consists in making the wrong choice and voluntarily encountering a known unreasonable risk.[11]

In *Mosher v. Evans*, this Court held that "secondary assumption of the risk is subsumed under the principles of comparative negligence and that issue is ordinarily one for the jury."[12]

In *Koutoufaris v. Dick*, the Delaware Supreme Court held that "[it] agree[d] with [the holding in *Fell*] as a correct statement of Delaware law."[13] The Delaware Supreme Court found that by enact-

---

9. Defendants' Response to Motion to Strike at ¶ 4.

10. *Pack & Process, Inc.*, 503 A.2d at 660.

11. *Fell v. Zimath*, 575 A.2d 267, 267–268 (Del.Super.1989) (holding that "secondary assumption of risk under the facts which have been presented in this case is not a bar to possible recovery by plaintiff but that, if the facts are favorable to defendants that defense is to be treated as contributory negligence and weighed against the negligence of defendant"); *see Prosser and Keeton on Torts* § 68 at 481 (5th ed. 1984).

12. *Mosher v. Evans*, 1998 WL 278409, at *2, n. 8, 1998 Del.Super. Lexis 183, *n. 8 (quot-

ing *Croom v. Pressley*, 1994 WL 466013, *5, 1994 Del.Super. Lexis 385, *15) (holding that "Delaware recognizes both primary and secondary assumption of the risk ... [p]rimary assumption of the risk is generally found where the plaintiff expressly accepts the risk ... [c]onversely, secondary assumption of the risk is found where 'the plaintiff's conduct in encountering a known risk may in itself be unreasonable, because the danger is out of proportion to the advantage which he is seeking to obtain' ").

13. *Koutoufaris v. Dick*, 604 A.2d 390, 398 (Del.1992).

ing the comparative negligence statute the General Assembly intended that "where negligence is reflected in the conduct of both parties, liability, and consequent recovery, be determined proportionately." [14] The Supreme Court also held in *Koutoufaris* that "it was not necessary to distinguish between primary and secondary assumption of risk if either constitutes an absolute bar to recovery, [however] with the legislative adoption of comparative negligence the distinction became important." [15]

■ The distinction between primary and secondary assumption of risk is important because secondary assumption of risk may only reduce a defendant's liability while primary assumption of risk (express or implied) "might well" completely relieve a defendant of liability.[16] In *Koutoufaris*, the Supreme Court held that "primary assumption of risk involves express consent to relieve the defendant of any obligation of care." [17] In accord, a secondary source states that

> [i]mplied primary assumption of risk exists where a plaintiff assumes known future risks inherent in a particular activity or situation. The risks assumed are not those created by defendant's negligence but rather by the nature of the activity itself. Therefore, implied primary assumption of risk is, arguably,

not a true negligence defense since no cause of action for negligence is ever alleged.[18]

■ The parties' dispute about whether assumption of risk can or cannot be plead as a distinct affirmative defense is ultimately more a matter of semantics than substance. When a plaintiff unreasonably volunteers or chooses to encounter a known risk, the plaintiff has assumed the risk in a secondary sense. "The weight of authority is in agreement" that voluntarily accepting an unreasonable risk, or failing to exercise reasonable care to protect oneself after accepting an unreasonable risk, "though labeled 'assumption of risk,' is mere contributory negligence." [19] This illustrates the "confusion" that had existed in this area of law before the Delaware Supreme Court in *Koutoufaris v. Dick* clarified the issue.[20]

This Court holds that assumption of risk in Defendants' affirmative defense of contributory negligence asserted in their answer should be stricken. In the instant case there appears to be no evidence to support a claim that minor Plaintiff expressly or impliedly assumed any risk; therefore, an affirmative defense of assumption of risk based on primary assumption of risk cannot stand. Also, because secondary assumption of risk is

---

14. *Koutoufaris*, 604 A.2d at 397.

15. *Id.*

16. *Koutoufaris*, 604 A.2d at 397 (holding that "primary assumption of risk ... 'refers to those cases where the plaintiff expressly relieves the defendant from all legal duty'"); *Lafate v. New Castle County*, 1999 WL 1241074 *3, 1999 Del.Super. Lexis 496 *8 (holding that "[p]rimary assumption of the risk by a plaintiff is an affirmative defense that bars a claim of negligence"); *Delmarva Power & Light Company, Inc. v. King*, 608 A.2d 726 (Del.1992) (holding that "where the assumption of the risk is of the primary type,

i.e., a bargained for, agreed-upon shifting of the risk of harm, a plaintiff's conduct might well constitute a complete ban to recover, as a matter of law, even in a comparative negligence jurisdiction").

17. *Koutoufaris*, 604 A.2d at 397.

18. Publisher's Editorial Staff: Thompson West, Comparative Negligence Manual 3d § 1:21 (2004).

19. *Id.*

20. *Koutoufaris*, 604 A.2d at 397.

subsumed within comparative negligence this Court does not need to differentiate between secondary assumption of risk and contributory negligence.

Defendants do correctly state that secondary assumption of risk can be pled as part of a contributory negligence defense; however, as this Court held in *Fell v. Zimath*, "[i]n order to avoid confusion during the trial, the Court strikes the separate defense of assumption of risk." [21] Defendants will be able to present evidence of minor Plaintiff's alleged contributory negligence at trial; to avoid "confusion during the trial," however, that evidence will not be referred to by the parties or by the Court as evidence of "assumption of risk."

For the foregoing reasons, this Court **GRANTS** Plaintiffs' motion to strike assumption of risk from Defendants' affirmative defense of contributory negligence asserted in Defendants' answer.

## IV. PLAINTIFFS' "MOTION TO SHIFT THE BURDEN OF PROOF AND ESTABLISH A REBUTTABLE PRESUMPTION OF LACK OF NEGLIGENCE BY MINOR PLAINTIFF."

### A. Contentions of the Parties.

█ Delaware recognizes a rebuttable presumption that a child under seven years of age is incapable of negligence. However, Plaintiffs argue that minor Plaintiff, who was seven years, seven and a half months old when she was bitten by defendants' dog, should nevertheless be able to assert a rebuttable presumption that this particular minor Plaintiff was incapable of negligence. Plaintiffs contend (and have proffered a report from a child psychologist to support their contention) that minor Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), so that "[minor Plaintiff's] emotional and mental age at the time of the incident ... was less than that of an average seven years old." [22] Plaintiffs argue that under these circumstances the burden should shift to Defendants to prove that minor Plaintiff was capable of negligence instead of it remaining Plaintiffs' burden to prove that she was not capable of negligence. To establish a pretrial record on this issue, Plaintiffs request that Defendants

> be obligated to come forward with sufficient evidence that [minor Plaintiff] possessed the maturity and capacity to be negligent in the ways enumerated in the affirmative defense, by a day certain. If sufficient evidence is not presented by that date, plaintiffs request summary judgment on comparative negligence. [23]

Defendants counter that the rebuttable presumption that a child less than seven years old is incapable of negligence should not be applied to minor Plaintiff because she was seven years, seven and a half months old at the time she was bitten. Defendants assert that this Court should not consider minor Plaintiff's mental and emotional characteristics, but rather consider only her chronological age. [24]

---

21. *Fell*, 575 A.2d at 269.

22. Plaintiffs' Motion to Shift Burden at Exhibit A.

23. Plaintiffs' Motion to Shift Burden at ¶ 3.

24. Defendants argue that in the alternative that "evidence that the minor Plaintiff "teas[ed], torment[ed] or abus[ed]" the Defendants' dog should be admissible, regardless of whether she was capable of contributory negligence." (Defendants' Response to Motion to Shift Burden at page 3). Because this Court has denied Plaintiffs' motion on other grounds, the Court need not reach this issue.

**B. The rebuttable presumption that a minor who is less than seven years old is incapable of negligence is not available to a minor who is seven years old or older regardless of that minor's alleged mental capacity or maturity.**

The issue before this Court is whether this minor Plaintiff, who was seven years, seven and a half months old when she was bitten by Defendants' dog, can potentially assert the rebuttable presumption that a minor who is less than seven years old is incapable of negligence. The Delaware Supreme Court, commenting generally on negligence of children, said in *Pokoyski v. McDermott* that

> [w]hile it is generally recognized that the rule of contributory negligence is modified as to children, it is, nevertheless, the duty of children to exercise that degree of care which children of the same age are accustomed to exercise under like circumstances. Courts have found it impossible to lay down a fixed and fast rule for determination in every case as to at what age and under what circumstances the child may be guilty of contributory negligence. The maturity and capacity of the child, her ability to understand and appreciate the danger, her familiarity with the surroundings, together with the circumstances under which the accident occurred, must all be taken into consideration in determining whether or not she was guilty of contributory negligence.[25]

In the seminal case of *Audet v. Convery*, this Court held that

> a minor below the age of seven years can be guilty of actionable negligence.

However, the plaintiff must overcome the presumption that such minors are as a general rule incapable of negligence.[26] In *Beggs v. Wilson*, the Delaware Supreme Court held that

> there is some age level below which there is a conclusive presumption that the child is incapable of negligent conduct ... We are aware that many jurisdictions have selected the age of seven years as the level under which a child is conclusively presumed incapable of negligence, but we think this is unrealistic. There is no significance to the attainment of the age of seven years other than its historical significance in criminal law. (Citation omitted). A child's perception and judgment develop gradually throughout his youth. Just as there is no particular age level at which this development process is noticeably altered, there is no particular rate at which the process is completed. In growing up, each child is physically unique, and the law should recognize this uniqueness.[27]

The Supreme Court then went on to say that "the rule laid down by the Superior Court in *Audet v. Convery* is proper and [we] approve it."[28]

Plaintiffs cite both *Audet* and *Beggs* as supporting their position that minor Plaintiff should be able to assert the rebuttable presumption under the circumstances particular to her; however, neither case directly or indirectly supports their position. *Audet* and *Beggs* involved minor plaintiffs who were under the age of seven. In *Audet* and *Beggs* the courts held that when determining whether a minor was contrib-

---

**25.** *Pokoyski v. McDermott*, 167 A.2d 742, 744–745 (Del.1961).

**26.** *Audet v. Convery*, 187 A.2d 412, 413 (Del.Super.1963), *approved, Beggs v. Wilson*, 272 A.2d 713, 714 (Del.1970).

**27.** *Beggs*, 272 A.2d at 714.

**28.** *Id.* at 715.

utorily negligent, the minor should be compared to other children of the same age, mental capacity and maturity regardless of whether the minor is under seven years of age or seven years of age or older. The two cases do not hold or otherwise suggest that the availability of the rebuttable presumption itself should be determined based on mental capacity or maturity. It follows that the availability of the rebuttable presumption is determined by chronological age.

While Delaware courts have not explicitly held that "age" as used in the rebuttable presumption refers only to chronological age, the Michigan Court of Appeals in *DeCamp v. Fleckenstein* did, in addressing that very issue, hold that "age" is determined by chronological age and not "mental" age.[29] *DeCamp* is instructive because of its similarities to the instant case. In *DeCamp*, the minor plaintiff was eight years old when he was struck by a car while riding his bicycle. There was evidence presented at trial that minor plaintiff's mental age was five years, ten months at the time of the accident. The jury found for the defendant and plaintiffs moved for a new trial, which was denied. On appeal, plaintiffs argued, among other things, that the trial judge erred "because the child's mental age was under seven years he was entitled to an instruction ... that the minor could not be guilty of contributory negligence."[30]

The Michigan Court of Appeals held that

[n]one of these cases [cited by the plaintiffs] support the instant plaintiffs' contention that if the age of the minor in years is seven or more, but the mental age is under seven, contributory negligence cannot be considered but instead they indicate that the question is one of fact to be submitted to the jury.[31]

That Court also held that

the trial judge did not err in refusing to instruct the jury that they could not consider [minor plaintiff's] contributory negligence as a matter of law but instead was correct in deciding that it was a jury question which they would determine based on what a "reasonably careful minor of like age, mental capacity, and experience would do or would not do under such circumstances."[32]

This Court agrees with the Michigan Court of Appeals' analysis in *DeCamp* that "age" as used in the rebuttable presumption that a child under the age of seven is presumed to be incapable of negligence refers only to chronological age and not to mental capacity or maturity. Delaware case law supports the proposition that these factors are considered when comparing a minor to other children of the same chronological age to determine whether a minor was contributorily negligent. In *Moffitt v. Carroll*, the Delaware Supreme Court held that

this Court now concludes that the Delaware comparative negligence statute reflects no legislative intent to change Delaware's historic common law determination of child negligence in accor-

29. *DeCamp v. Fleckenstein,* 25 Mich.App. 85, 181 N.W.2d 47, 49 (1970) (holding that "the trial judge did not err in refusing to instruct the jury that they could not consider plaintiff minor's contributory negligence as a matter of law [because of her alleged mental age] but instead was correct in deciding that it was a jury question which they would determine based on what a 'reasonably careful minor of

like age, mental capacity, and experience would do or would not do under such circumstances' ").

30. *DeCamp,* 181 N.W.2d at 48.

31. *Id.* at 49.

32. *DeCamp,* 181 N.W.2d at 49.

dance with the standard of care articulated in *Pokoyski.* Consequently, Delaware continues to adhere to its common law standard of care for determining the negligence of a child. Therefore, superimposed upon Delaware's statutory framework of comparative negligence is the well-established principle that a child's negligence is to be determined by a standard of care which is based upon an individualized assessment of the child's age, intelligence, maturity, and other factors relevant to the conduct involved.[33]

The minor Plaintiff in the instant case was seven years, seven and a half months old when she was bitten by Defendants' dog; therefore, she is not entitled to assert the rebuttable presumption that a child under the age of seven is presumed to be incapable of negligence. The question of minor Plaintiff's potential contributory negligence is a "question [that] hinges on the maturity and capacity of the child, the ability and understanding to appreciate the particular dangers involved, as well as other pertinent circumstances. [Citation omitted] Thus, the question of negligence is one for determination by a jury."[34]

For the foregoing reasons, Plaintiffs' "Motion to Shift the Burden of Proof and Establish a Rebuttal Presumption of Lack of Negligence by Minor Plaintiff" is **DENIED**.

## V. CONCLUSION.

For the foregoing reasons, Plaintiffs' "Motion to Strike Affirmative Defense of the Premises Guest Statute" and "Motion to Strike Affirmative Defense of Assumption of Risk" are **GRANTED;** Plaintiffs' "Motion to Shift the Burden of Proof and Establish a Rebuttal Presumption of Lack of Negligence by Minor Plaintiff" is **DENIED.**

**IT IS SO ORDERED.**

33. *Moffitt v. Carroll,* 640 A.2d 169, 173–174 (Del.1994).

34. *Audet,* 187 A.2d at 413.