**Anthony RUSSO, Plaintiff,**

v.

**Ellen ZEIGLER, Michael Zeigler, and Stephanie Zeigler Defendants.**

**C.A. N11C–08–120 PRW.**

Superior Court of Delaware, New Castle County.

Submitted: May 14, 2013.
Decided: May 15, 2013.
Opinion Issued: May 30, 2013.

---

Frederick S. Freibott, Esquire, Freibott Law Firm, P.A., Wilmington, Delaware, Attorney for Plaintiff.

Stephen P. Casarino, Esquire, Casarino, Christman, Shalk, Ransom & Doss, P.A., Wilmington, Delaware, Attorney for Defendants.

## OPINION

WALLACE, J.

### I. INTRODUCTION

Plaintiff Anthony Russo ("Russo") filed a complaint which alleged, in pertinent part, that Ellen Zeigler ("Ellen") and Michael Zeigler ("Michael") were strictly liable for injuries and damages caused when their dog, an Akita named Drift ("Drift"), bit him.[1] Russo also alleged in the same complaint that Ellen, Michael, and their adult daughter Stephanie Zeigler ("Stephanie") (collectively the "Defendants") negligently caused Russo's injuries and damages by, among other things, failing to

---

1. Complaint, dated Aug. 16, 2011, at ¶ 5 [hereinafter "Complaint"]; *see* Del.Code Ann. tit. 9, § 913 (2013).

secure or keep reasonable control of Drift and for allegedly failing to warn Russo of Drift's "dangerous propensity to attack."[2] Russo's claims stemmed from an incident on September 3, 2009 when, at approximately 2:00 am, he entered Ellen and Michael's home with Stephanie and, during the early morning visit, was bitten on the face by Drift.[3]

In their answer, Defendants raised two affirmative defenses: (1) Russo assumed the risk of injury by placing his face near Drift's face without knowing Drift, and (2) Russo teased and/or tormented Drift.[4] The Court scheduled trial to begin on May 13, 2013.[5]

At the pretrial conference, Defendants objected to Russo's request for a "strict liability" instruction to describe Ellen and Michael's liability under 9 *Del. C.* § 913.[6] Rather, Defendants argued that 9 *Del. C.* § 913 does not impose strict liability, and that Ellen and Michael were entitled to raise common law defenses.[7] Defense Counsel also requested an assumption-of-risk instruction.[8] For the following reasons, Plaintiff's request for a strict liability instruction is **GRANTED in PART,** while Defendant's request for an instruction on assumption of the risk or comparative negligence[9] is **DENIED.**[10]

## II. THE DELAWARE DOGBITE STATUTE

In 1998, the General Assembly enacted 7 *Del. C.* § 1711, which imposes "strict liability" on dog owners in certain circumstances.[11] The new statute was enacted in

**2.** Complaint at ¶ 4. Prior to trial, Plaintiff's Counsel informed the Court that Russo sought to recover from Ellen and Michael only under 9 *Del. C.* § 913, and sought to recover from Stephanie only under a theory of negligence. Trial Transcript, May 13, 2013 [hereinafter Tr. Trans.].

**3.** Complaint at ¶ 3.

**4.** Answer to Complaint, dated Oct. 21, 2011, at ¶ 7–8; *see* DEL.CODE ANN. tit. 9, § 913 (2013) ("The owner of a dog is liable . . . unless the injury, death or loss was caused to the body or property of a person who, at the time, . . . was teasing, tormenting or abusing the dog.").

**5.** Trial Scheduling Order, dated Oct. 28, 2011, at ¶ 12.

**6.** Transcript of Pretrial Conference at 4:7–15 [hereinafter "PC Tr."].

**7.** PC Tr. at 4:18–22. Prior to trial, Defense Counsel argued that the several clauses excepting dog owners from liability distinguishes 9 *Del. C.* § 913 from traditional strict liability statutes.

**8.** PC Tr. at 10:16–18; *see, e.g., Brady v. White,* 2006 WL 2790914, at *4 (Del.Super.Ct. Sept. 27, 2006) ("Plaintiff has not established that

by enacting the current dog bite statute, the legislature meant to repeal long-standing common law defenses.").

**9.** The parties agreed that the facts of this case could not support a primary or express assumption of risk instruction, but instead that only secondary assumption of risk, which has now been subsumed by Delaware's comparative negligence statute, could be established. *See McCormick v. Hoddinott,* 865 A.2d 523, 528 (Del.Super.2004); Tr. Trans., May 13th, 2013.

**10.** After argument and a mid-trial prayer conference the Court made these rulings. At that time, the Court advised the parties that these rulings would be reduced to writing. On May 15, 2013, the Court declared a mistrial when the jury could not reach unanimity on either the § 913 claim against Ellen and Michael or the damages aspect of the negligence claim against Stephanie. Of note is the fact that the jury found Russo fifty-percent contributorily negligent in regard to the latter.

**11.** Later redesignated as DEL.CODE ANN. tit. 9, § 913 (2010). House Bill 419, 145th General Assembly (2010). The new law removed the "scienter" element from the common law dog-bite tort. *See Brady v. White,* 2006 WL 2790914, at *3–4 ("By enacting the dog bite statute, the legislature merely intended to

response to "well-publicized and shocking problems caused by people who were irresponsibly keeping vicious dogs as pets."[12] Under the new law, a dog owner was liable for any injury or damages resulting from a dog bite unless the plaintiff was, when bitten, (1) trespassing or committing a crime on the owner's property; (2) committing a crime against any person; or (3) teasing, tormenting, or abusing the dog.[13] This Court first recognized the statute as imposing strict liability in *Bemiller v. Rodriguez*.[14] Later, in another dog-bite case, *McCormick v. Hoddinott*, this Court resolved the question of whether the former common law defense of assumption of the risk had been subsumed within Delaware's comparative negligence statute by finding it was.[15] The Court in *McCormick* did not resolve and, in fact, never needed to address the next question posed here: whether the comparative negligence stat-

ute was applicable to a tort brought under a strict liability statute.[16]

Soon after, this Court applied the so-called "veterinarian's rule," a doctrine that is best understood as an application of the primary assumption of the risk defense to a dog-bite statute.[17] There, the Court, in granting summary judgment in favor of a defendant dog owner whose injured pet had nipped a treating veterinarian, held that the veterinarian knew the dog's propensities and assumed the risk of injury when treating her patients.[18]

■ As the authorities generally state, liability under dog-bite statutes arises solely from the legal relationship between the owner and the dog.[19] This Court has found that Delaware's dog-bite statute imposes strict liability for damages on the dog owners regardless of the owners' knowledge of any dangerous propensities.[20]

---

eliminate the old 'one free bite' rule.... [D]og owners could no longer avoid liability for dog bites by claiming they were unaware that their animals were vicious.").

12. *Brady*, 2006 WL 2790914, at *3; *Tilghman v. Delaware State University*, 2012 WL 3860825 (Del.Super.Ct. Aug. 15, 2012) (same).

13. DEL.CODE ANN. tit. 9, § 913 (2013).

14. 2000 WL 1611085, at *3 (Del.Super.Ct. Aug. 21, 2000).

15. 865 A.2d 523, 528 (Del.Super.2004); *see* DEL.CODE ANN. tit. 10, § 8132 (2013).

16. 865 A.2d at 525–30.

17. *Brady*, 2006 WL 2790914 at *4. *See also Nelson v. Hall*, 165 Cal.App.3d 709, 211 Cal. Rptr. 668, 673 (1985) ("A veterinarian or a veterinary assistant who accepts employment for the medical treatment of a dog, aware of the risk that *any* dog, regardless of its previous nature, might bite while being treated, has assumed this risk as part of his or her occupation.").

18. *Brady*, 2006 WL 2790914 at *4 ("Plaintiff has not established that by enacting the current dog bite statute the legislature meant to ... reconfigure the relationship between veterinarians, their patrons, and their insurance carriers.").

19. *See Smiley v. Taylor*, 2008 WL 5206811, at *3 (Del.Super.Ct. Dec. 10, 2008) ("Accordingly, [Defendant] can only be strictly liable to [Plaintiff] pursuant to [Delaware's dog-bite statute] if she was the owner of [the dog] at the time of the alleged bite."); *see also Audette v. Commomwealth*, 63 Mass.App.Ct. 727, 829 N.E.2d 248, 255 (2005) ("The [dog-bite] statute is indifferent to any question of negligence on the part of the owner.").

20. *Smiley v. Taylor*, 2009 WL 2852439, at *1 (Del.Super.Ct. Aug. 27, 2009) ("[Plaintiff's] claim rested primarily upon a Delaware statute which imposes strict liability on the owner of the dog for injuries caused by that dog."); *Bemiller v. Rodriguez*, 2000 WL 1611085, at *2 (Del.Super.Ct. Aug. 21, 2000) ("Therefore, dog owners are strictly liable for injuries caused by their dog."). Courts in Connecticut and Massachusetts have similarly interpreted dog-bite statutes analogous to De-

Under such statutes, the dog owner acts as insurer of the dog.[21] And this strict liability relieves a plaintiff from "proving specific acts of negligence" and "protects him from certain defenses" like that embodied in Delaware's comparative negligence statute.[22]

## III.  DISCUSSION

### A.  Russo must prove his behavior did not fall into an "exception" to the strict liability rule.

▮     Delaware's dog-bite statute imposes liability regardless of whether the owner knew or had reason to know that her dog was inclined toward dangerous behavior.[23] The dog owner is not liable, however, if the Plaintiff was, among other things, teasing or tormenting the dog.[24] It is a matter of first impression in Delaware whether the Plaintiff or the Defendant bears the burden of proving the applicability or inapplicability of the "exceptions" enumerated in the statute.

Massachusetts and Connecticut both have substantially similar dog-bite statutes.[25] In both states, courts have held that under a strict liability dog-bite statute, "[a] plaintiff bears the burden of showing that he was not committing a trespass or other tort, and was not teasing, tormenting or abusing the dog."[26] Given the consequence for a dog owner to whom the statute applies, placing the burden of proving this element on the one who seeks such application is appropriate. This Court simply can find neither statutory support nor any justification for placing that burden on defendant dog owners. Thus Russo must demonstrate that none of the statutory "exceptions" are applicable to his activity when bitten. In turn, Plaintiff's Application for an Instruction on Strict Liability is **GRANTED in PART.** The jury in this case will be instructed

---

laware's. *See Giacalone v. Housing Authority of Town of Wallingford*, 306 Conn. 399, 51 A.3d 352, 355 (2012) ("Specifically, General Statutes § 22–357 [Connecticut's dog-bite statute] imposes strict liability on the 'owner or keeper' of a dog for harm caused by the dog, with limited exceptions."); *Falby v. Zarembski*, 221 Conn. 14, 602 A.2d 1, 3–4 (1992) (same); *Malchanoff v. Truehart*, 354 Mass. 118, 236 N.E.2d 89, 93–94 (1968) ("The statute imposes strict liability on the owner or keeper of a dog which shall do any damage to the body or property of any person, and proof that the owner was negligent, or otherwise at fault, or knew that the dog had any dangerous propensities is not essential to recovery." (internal quotation marks omitted)).

21.  *Carroll v. Moxley*, 241 So.2d 681, 682 (Fla. 1970) (referring to Florida's dog-bite statute, Fla. Stat. § 767.04 (2013), which "makes the dog owner the insurer against damage by his dog with certain exceptions"). *See also Boyer v. Seal*, 553 So.2d 827, 834 (La.1989) ("[T]he person who has the guardianship and usually the enjoyment of the person or thing should bear the cost of damage caused by risks they create rather than the innocent victim.").

22.  *Combs v. ICG Hazard, LLC*, 2013 WL 1182747, at *9 (E.D.Ky. March 21, 2013); *Fandrey ex rel. Connell v. American Family Mut. Ins. Co.*, 272 Wis.2d 46, 680 N.W.2d 345, 350 (2004); *see, e.g.*, DEL.CODE ANN. tit. 10 § 8132 (2013).

23.  *Brady*, 2006 WL 2790914 at *4.

24.  DEL.CODE ANN. tit. 9, § 913 (2013) ("Exceptions" to § 913 liability are when the person bitten was then (1) trespassing or attempting to trespass upon the owner's property; (2) committing a crime or attempting to commit a crime on the owner's property; (3) committing a crime against any person; or (4) teasing, tormenting, or abusing the dog.).

25.  *See* CONN. GEN.STAT. ANN. § 22–357 (2013); MASS. GEN. LAWS ANN. ch. 140, § 155 (2013).

26.  *Audette v. Commonwealth*, 63 Mass.App.Ct. 727, 829 N.E.2d 248, 255 (.2005); *see also Hanson v. Carroll*, 133 Conn. 505, 52 A.2d 700, 701 (1947); *Malchanoff v. Truehart*, 354 Mass. 118, 236 N.E.2d 89, 93 (1968); *Koller v. Duggan*, 346 Mass. 270, 191 N.E.2d 475, 478 (1963); *Sullivan v. Ward*, 304 Mass. 614, 24 N.E.2d 672, 673–74 (1939).

under § 913, but that instruction will make it clear that Russo must prove by a preponderance of the evidence that he was not a provocateur of Drift.[27]

## B. Comparative Negligence or Assumption of the Risk Defenses Are Generally Not Available in Dog–Bite Actions Brought Under Liability Statutes Like 9 *Del. C.* § 913.

■ Allocation-of-fault statutes are not applicable in dog-bite actions under liability statutes like 9 *Del. C.* § 913 unless expressly stated.[28] Even when comparative negligence may be a defense, the bar is high.[29] Delaware's comparative negligence statute is narrowly constructed, and its application is limited to actions based in negligence:

In all actions brought to recover damages for *negligence* which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by the plaintiff or the plaintiff's legal representative where such negligence was not greater than *the negligence of the defendant* or the combined *negligence* of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff.[30]

■ When Delaware's dog-bite statute is read together with the Delaware's comparative negligence statute, it is clear the latter cannot be used in defense of an action under the former.[31] The clear and unambiguous language of Delaware's dog-bite statute expressly makes the owner "liable in damages for *any* injury." [32]

27. Of course, if evidence of any other "exception" is present, Russo will have the burden of proving its inapplicability. *See, e.g., DeVivo v. Anderson*, 410 N.J.Super. 175, 980 A.2d 498, 499 (N.J.Super.Ct. Law Div.2009). Under New Jersey's dog-bite statute, plaintiff must prove she was "either in a public place or lawfully in a private place" including the property of the owner of the dog. *Trisuzzi v. Tabatchnik*, 285 N.J.Super. 15, 666 A.2d 543, 546 (N.J.Super.Ct. App.Div.1995).

28. *See* Wis. Stat. Ann. § 174.02 (2013) (stating Wisconsin's dog-bite statute is subject to Wis. Stat. Ann. § 895.045, Wisconsin's contributory negligence statute); La. Civ.Code Ann. art. 2323(B) (2012) ("The provisions of [Louisiana's comparative fault statute] shall apply to *any* claim for recovery of damages for injury, death, or loss asserted under *any* law or legal doctrine or theory of liability, *regardless of the basis of liability*." (emphasis added)); Utah Code Ann. § 78B–5–817–818 (" 'Fault' means any actionable breach of legal duty ... including negligence in all its degrees, comparative negligence, assumption of the risk, strict liability...."). *Cf. Hill v. Sacka*, 256 Mich. App. 443, 666 N.W.2d 282, 289 (2003) ("[W]e conclude that the dog-bite statute does not allow for consideration of any comparative negligence on the part of the dog-bite victim....").

29. *See Dougan v. Nunes*, 645 F.Supp.2d 319, 323–24 (D.N.J.2009) ("Comparative negligence may indeed be a defense to cases brought under N.J. Stat. Ann. § 4:19–16 [New Jersey's dog-bite statute].... However, unlike typical claims of comparative negligence, in the strict liability setting, a defendant must prove that the 'plaintiff knew the dog had a propensity to bite either because of the dog's known viciousness or because of the plaintiff's deliberate acts intended to incite the animal.' "); *DiGrazia v. Castronova*, 48 A.D.2d 249, 368 N.Y.S.2d 898, 901 (N.Y.App. Div.1975) (same).

30. Del.Code Ann. tit. 10, § 8132 (2013) (emphasis added).

31. *E.g., Johnson v. Johnson*, 386 Ill.App.3d 522, 325 Ill.Dec. 412, 898 N.E.2d 145, 163–64 (2008) (comparison of Illinois' dog-bite statute and a comparative fault statute does not allow submission of a comparative negligence instruction); *Hill*, 666 N.W.2d at 289 (same).

32. Del.Code Ann. tit. 9, § 913 (2013). *See Hill*, 666 N.W.2d at 289 (The use of "*any*" means *every* and *all* and suggests the absence of limits altogether." (internal quotation marks omitted)(emphasis added)).

Such language leaves no room for diminution by finding of comparative fault. Instead there appears to be only two defenses, external to § 913, that may apply.[33] First is primary, or express, assumption of the risk, as this Court applied in *Brady v. White* to relieve dog owners of liability for injuries to a veterinarian-victim who was treating the dog.[34] The second might be for the Court to determine whether public policy would be violated by the application of the strict liability statute in certain circumstances.[35]

Defendants have not pled or demonstrated primary assumption of the risk, however; nor have they argued for consideration of a public policy exception. Defendants have not demonstrated that secondary assumption of the risk, or com-

parative negligence, can be applied within the framework of Delaware's strict liability dog-bite statute. Consequently, the Court cannot find that as to the strict liability claim brought under § 913, Defendants are permitted an instruction on assumption of the risk, i.e., comparative negligence,[36] as a defense. For that reason, the Zeiglers' Application for an Instruction on Assumption of Risk or Comparative Negligence is **DENIED.**

**IT IS SO ORDERED.**

---

**33.** *See McCormick v. Hoddinott*, 865 A.2d 523, 528 (Del.Super.2004).

**34.** *See, Brady v. White*, 2006 WL 2790914, at *4 (Del.Super.Ct. Sept. 27, 2006) ("[T]he court is not compelled to give a strict literal meaning to the statute when it would depart from the statute's true intent and purpose.... The court will view the law as doing only what needed to be done.").

**35.** If the Court were to adopt the Wisconsin Supreme Court's approach, it might be authorized to apply a public policy bar to liability for a dog-bite injury under Delaware's strict liability statute. *See Fandrey ex rel.*

*Connell v. American Family Mut. Ins. Co.*, 272 Wis.2d 46, 680 N.W.2d 345, 361 (2004) ("The six traditional public policy factors the judiciary uses to preclude liability in tort actions are applicable to Wis. Stat. § 174.02 [Wisconsin's dog-bite statute].... [A]llowing recovery would place too unreasonable a burden on the homeowners...."). *But see Erdmann ex rel. Laughlin v. Progressive Northern Ins. Co.*, 332 Wis.2d 147, 796 N.W.2d 846, 849–852 (2011) ("Using public policy to preclude liability is an extraordinary matter.").

**36.** *See McCormick*, 865 A.2d at 528.