# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| N.K.S. DISTRIBUTORS, INC. and ROBERT F. TIGANI, SR., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| WHEELER, WOLFENDEN & DWARES, P.A., | ) C.A. No. N11C-11-146-JRJ ) ) |
| Defendant | ) ) |
| v. | ) ) |
| CHRISTOPHER J. TIGANI, MY PAL LLC, MY PAL #2 LLC, and WORLD CLASS WHOLESALE, INC., | ) ) ) ) |
| Third-Party Defendants. | ) ) |

## OPINION

Date Submitted: June 23, 2014
Date Decided:  September 26, 2014

*Upon Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment:*
**DENIED**.

Kevin William Gibson, Esquire, Gibson & Perkins P.C., 1326 King Street Wilmington, DE 19899, Attorney for the Plaintiffs.

Thad J. Bracegirdle, Esquire, Wilks Lukoff & Bracegirdle LLC, 1300 N. Grant Avenue, Suite 100, Wilmington, DE 19806, Attorney for Defendant-Third Party Plaintiff Wheeler, Wolfenden & Dwares, P.A.

**Jurden, J.**

# I. INTRODUCTION

Before the Court is Plaintiffs'[1] Motion to Strike or Alternatively for Partial Summary Judgment. Plaintiffs filed suit against Defendant Wheeler, Wolfenden & Dwares, P.A. ("WWD"), alleging that WWD committed professional malpractice while performing auditing services for N.K.S. Distributors, Inc. ("N.K.S."). Specifically, Plaintiffs allege that WWD negligently failed to discover the misappropriation of millions of dollars from N.K.S. by Christopher Tigani ("Chris Tigani") during the time he served as N.K.S.'s President and later Vice President.

WWD filed a Third-Party Complaint against Chris Tigani and his companies, My Pal LLC, MY Pal #2 LLC, and World Class Wholesale, Inc. (collectively "My Pal"), and raised the affirmative defense of *in pari delicto* seeking contribution from Chris Tigani and My Pal. WWD maintains that Plaintiffs' claims are barred in whole or in part by the equitable doctrine of *in pari delicto* because Chris Tigani's improper acts are imputed to N.K.S. by virtue of his former position as a corporate officer and minority shareholder, such that Plaintiffs are precluded from recovery as a fellow guilty party.

---

[1] N.K.S., Robert F. Tigani, Sr. ("Bob Tigani"), and Robert F. Tigani, Sr. as Trustee of The Irrevocable Trust for the Benefit of Robert F. Tigani (collectively "Plaintiffs").

Plaintiffs ask the Court to strike WWD's fourth affirmative defense raising the doctrine of *in pari delicto* pursuant to Superior Court Civil Rule 12(f), or alternatively, for partial summary judgment regarding this affirmative defense.

Plaintiffs argue that the affirmative defense of *in pari delicto* should be stricken because: (1) the doctrine in the context of auditor malpractice is not clearly settled in Delaware and is inapplicable in the present case; and (2) even if the doctrine applies in an auditor malpractice case, Plaintiffs' claims fall under the "adverse interest exception" because Chris Tigani's actions were purely self-interested, in no way benefited N.K.S., and seriously damaged N.K.S.. Alternatively, Plaintiffs argue they are entitled to partial summary judgment on the *in pari delicto* defense.

In response, WWD argues that Plaintiffs' motion to strike is untimely pursuant to Rule 12(f), and their request for summary judgment on the affirmative defense of *in pari delicto* is premature. For the reasons that follow, Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment is **DENIED**.

## II. FACTS

N.K.S. is a Delaware corporation which operates in the business of wholesaling and distributing beer, wine, and other alcoholic beverages.[2]  Bob

---

[2] Complaint at ¶4 ("Compl.") (Trans. ID. 40893763).

Tigani is N.K.S.'s Chairman and President.[3] Prior to his removal for financial mismanagement in April 2009, Chris Tigani exercised day-to-day operational control of N.K.S. as President and later Vice President for Sales and Marketing.[4]

WWD is an accounting firm with its principal place of business in Delaware.[5] From approximately January 1, 2005 until May 1, 2009, N.K.S. retained the services of WWD to audit its financial records and prepare financial statements for N.K.S.'s officers and directors.[6] Plaintiffs allege that during this time Chris Tigani "pilfered N.K.S.'s corporate accounts and lines of credit exclusively for his own benefit . . . [n]early destroying the company built by his grand-father and father. . . ."[7]

On January 6, 2009, Plaintiffs removed Chris Tigani from the N.K.S. Board of Directors.[8] Subsequently, on January 19, 2009, Plaintiffs reappointed Chris Tigani as President.[9] On March 12, 2009, Plaintiffs removed Chris Tigani as

---

[3] *Id.*
[4] *Id.* at ¶¶23–27.
[5] *Id.* at ¶5.
[6] *Id.* at ¶¶3, 129, 141.
[7] Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment at ¶3 ("Pl.'s Mot.") (Trans. ID 55431596). Plaintiffs allege that Chris Tigani used N.K.S. monies and credit to fund his extravagant lifestyle, maintain multiple residences, purchase high-end clothing and electronics, and charter private jets. *Id.* Plaintiffs also allege that through his own companies and Third-Party Defendants My Pal, Chris Tigani illegally used N.K.S. funds and financing improperly backed by N.K.S. assets to purchase the building and property which house N.K.S.'s principal place of business, only to lease the property back to N.K.S. at an inflated price. *Id.*
[8] Compl. at ¶24.
[9] *Id.* at ¶25.

President and appointed him as N.K.S.'s Vice President of Sales and Marketing.[10]

Ultimately, on April 30, 2009, Plaintiffs removed Chris Tigani from all employment positions with N.K.S..[11]

On May 1, 2009, having discovered some of Chris Tigani's financial mismanagement, N.K.S. terminated the services of WWD and shortly thereafter hired Briggs, Bunting & Dougherty LLP ("BBD") as N.K.S.'s outside auditor.[12] According to Plaintiffs, they did not learn the full extent of Chris Tigani's financial mismanagement until after they hired BBD.[13]

Plaintiffs allege that the BBD audit report ("BBD Audit") and the expert report of BBD's Charles J. Bramley ("Bramley Report") revealed that Chris Tigani's fraud "nearly destroyed N.K.S.."[14] According to Plaintiffs, the BBD Audit revealed that N.K.S. was financially mismanaged while under Chris Tigani's management between 2005 and 2008. For example, as of December 31, 2008, N.K.S. had a debt load of approximately $29,000,000.00, leaving it with no available operating cash, and almost completely depleting all available lines of credit.[15] According to the Bramley Report, Chris Tigani converted $5,124,493.00

---

[10] *Id.* at ¶26.
[11] *Id.* at ¶27.
[12] *Id.* at ¶¶129–130.
[13] *Id.* at ¶¶131–133. BBD was specifically retained by N.K.S. to audit the statements of assets, liabilities, and stockholders' equity of N.K.S. and the related statements of revenues expenses, retained earnings, and cash flows as of December 31, 2008. *Id.* at ¶131.
[14] *Id.* at ¶133.
[15] *Id.*

of N.K.S. funds to his own personal use.[16] Additionally, Plaintiffs allege that, due to Chris Tigani's financial mismanagement and fraud, in March of 2009, N.K.S. was forced into a Forbearance Agreement with its lenders, the terms of which required N.K.S. to incur additional costs, expenses, and increased interest rates on outstanding loans.[17]

Upon learning the full extent of Chris Tigani's financial mismanagement and fraud, N.K.S. filed a lawsuit in the Delaware Court of Chancery ("Chancery Court Action") against Chris Tigani to recover the misappropriated funds.[18]

Plaintiffs allege that WWD should have discovered the financial misdeeds of Chris Tigani and alerted N.K.S.'s officers and directors, and its failure to do so constitutes professional malpractice.

### III. PARTIES' CONTENTIONS

WWD argues that Plaintiffs' motion to strike is untimely because under "Rule 12(f) when a party seeks to strike an insufficient defense from a pleading . . . it must do so by motion made . . . within 20 days after the service of the pleading upon the party."[19] WWD argues that Rule 12(f) required Plaintiffs to file the instant motion to strike by no later than May 1, 2013, because WWD's Amended

---

[16] *Id.*
[17] *Id.* at ¶123.
[18] *Id.* at ¶134.
[19] Defendant's Answering Brief in Opposition to Plaintiffs' Motion to Strike or Alternatively for Summary Judgment at 5 (internal quotations omitted) ("Def.'s Ans. Br.") (Trans. ID 55579168).

Answer was filed on April 12, 2013.[20] Plaintiffs counter that under Rule 12(f) the Court may strike an insufficient defense at any time.[21]

With respect to WWD's affirmative defense of *in pari delicto*, Plaintiffs argue that no Delaware court has applied the doctrine of *in pari delicto* to an auditor malpractice claim, and it is inapplicable in any event because of the "adverse interest exception."[22] Under Delaware agency law, "the knowledge of an agent is generally imputed to his principal, except when the agent's own interests become adverse."[23] According to Plaintiffs, a "malfeasant agent's actions are not imputed to the corporation and the doctrine of *in pari delicto* will not bar a corporate-plaintiff's suit where the 'corporate agent responsible for the wrongdoing was acting solely to advance his own personal financial interest, rather than that of the corporation itself.'"[24] WWD counters that Plaintiffs' motion for partial summary judgment on WWD's *in pari delicto* affirmative defense is premature because there are genuine issues of material fact in dispute relating to

---

[20] *Id.* Plaintiffs' motion was not filed until May 12, 2014.
[21] Plaintiffs' Reply Brief in Support of Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment at 1–2 ("Pl.'s Rep. Br.") (Trans. ID 55632723).
[22] Plaintiffs' Opening Brief in Support of Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment at 7–9 ("Pl.'s Br.") (Trans. ID 55431596).
[23] *Id.* at 9.
[24] *Id.* at 11 (citing *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872 (Del. Ch. 2009)).

the defense, and urges the Court to defer ruling until the parties have had an opportunity to take discovery.[25]

## IV. STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 12:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these Rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the Court's own initiative at any time, the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.[26]

As a general rule, a motion to strike an affirmative defense is not favored by the courts.[27] "Therefore, such a motion is granted only where the facts viewed most favorably to the defendant cannot, as a matter of law, support the affirmative defense[]."[28] In considering a motion to strike an affirmative defense, the Court must determine whether the affirmative defense presents a "*bona fide* issue of fact or law."[29]

---

[25] Def.'s Ans. Br. at 3–4, 9–11. WWD contends that the BBD Audit and Bramley Report have not been authenticated or tested by WWD through depositions, and additional discovery is necessary. *Id.* at 3–4. Additionally, WWD contends that while Chris Tigani claimed in the Chancery Action that many of the expenditures in question were incurred for N.K.S.'s benefit, the Delaware Court of Chancery never had an opportunity to resolve these fact disputes in light of the parties' settlement. *Id.* at 4.

[26] Del. Super. Ct. Civ. R. 12.

[27] *Stinnes Interoil, Inc. v. Petrokey Corp., Diamond Industries, Inc.*, 1983 WL 412258, *1 (Del. Super. 1983); *McCormick v. Hoddinott*, 865 A.2d 523, 525 (Del. Super. 2004) ("Motions to strike are not favored and are granted sparingly, and then only if clearly warranted, with doubt being resolved in favor of the pleading.").

[28] *Stinnes*, 1983 WL 412258, at *1 (internal quotations omitted). *See also McCormick*, 865 A.2d at 525.

[29] *Stinnes*, 1983 WL 412258, at *1.

On a motion for summary judgment, the Court views all facts in a light most favorable to the non-moving party, and determines whether a genuine issue of material fact exists.[30] The Court will only grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[31] However, if the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the facts of the case, then summary judgment must be denied.[32] "When a motion for summary judgment is supported by evidence showing no material issues of fact, the burden shifts to the nonmoving party to demonstrate that there are material issues of fact requiring trial."[33]

## V.  DISCUSSION

*In pari delicto* is Latin for "in equal fault."[34] "[*I*]n pari delicto is a general rule that courts will not extend aid to either of the parties to a criminal act or listen to their complaints against each other but will leave them where their own act has placed them."[35] "[U]nder the *in pari delicto* doctrine, a party is barred from

---

[30] *Storm v. NSL Rockland Place LLC*, 898 A.2d 874, 879 (Del. Super. 2005).

[31] *J.L. v. Barnes*, 33 A.3d 902, 911 (Del. Super. 2011); *Storm*, 898 A.2d at 879.

[32] *Barnes*, 33 A.3d at 911–12 (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962)).

[33] *Urena v. Capano Homes, Inc.*, 901 A.2d 145, 150 (Del. Super. 2006) (citing *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979)).

[34] *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*(*AIG II*), 976 A.2d 872, 882 (Del. Ch. 2009).

[35] *Id.* (internal citations omitted).

recovering damages if his losses are substantially caused by activities the law forbade him to engage in."[36]

The question of whether the *in pari delicto* doctrine applies under Delaware law to bar a corporation's claim of professional malpractice against its outside auditor has yet to be decided by a Delaware Court. However, in *In re American Intern. Group, Inc. v Greenberg* (*AIG I*), the Delaware Court of Chancery, applying New York law, discussed the *in pari delicto* doctrine in the context of auditor malpractice. The Delaware Court of Chancery noted that New York courts consistently apply the *in pari delicto* doctrine to bar claims against auditors in situations where the auditors failed to detect or expose fraud committed by top corporate managers.[37] In dismissing the malpractice claims against AIG's auditor, the Court of Chancery "reluctantly" applied the New York law, expressing doubt that "this rule of auditor immunity is . . . a sound one . . . ."[38] The Court went on to state, "I expressly avoid any indication that the rule is one that Delaware embraces."[39]

---

[36] *Id.* at 883.

[37] 965 A.2d 763, 825 (Del. Ch. 2009).

[38] *Id.* at 816–17 ("I then conclude that PWC is correct about the immunity that New York appears to afford auditors in situations like this. I reach that conclusion reluctantly, because I do not believe that this rule of auditor immunity is, in the blunt manner in which it has been adopted, a sound one, and I expressly avoid any indication that the rule is one that Delaware law embraces.").

[39] *Id.*

A motion to strike an affirmative defense is governed by Rule 12. WWD contends that Plaintiffs' motion to strike was untimely filed under Rule 12(f) because it was not filed within 20 days after WWD filed its Amended Answer.[40]

Plaintiffs' motion to strike is untimely under Rule 12(f). Although the Court has the discretion under Rule 12(f) to strike an insufficient defense on its own initiative at any time,[41] it declines to do so at this juncture.[42]

Plaintiffs' alternative motion for partial summary judgment on WWD's *in pari delicto* defense centers on whether Chris Tigani was acting solely to advance his own personal financial interests, rather than those of N.K.S.. As noted above, under Delaware agency law or the *in pari delicto* doctrine, the adverse interest exception is seen as an exception to the general rule of imputation.[43] "That is, where applicable, the adverse interest exception will stop the knowledge of the corporation's agents from being imputed to the corporation."[44] Total abandonment of the corporation's interests is needed to invoke the adverse interest exception.[45]

---

[40] WWD filed its Amended Answer on April 25, 2013, and Plaintiffs filed the instant motion to strike May 12, 2014, almost a year later.

[41] *Stinnes*, 1983 WL 412258, at *1; *Valley Forge Corp. v. Certain-Teed Corp.*, 1978 WL 973, at *3 (Del. Ch. 1978).

[42] *Davenport Services, Inc. v. Cross*, 2001 WL 34083817, *1 (Del. Super. 2001) (denying a motion to strike on grounds that it was untimely).

[43] *AIG II*, 976 A.2d at 891.

[44] *Id.* at n.50 ("But regardless of whether the adverse interest exception is seen as an exception to in pari delicto or to imputation, the effect is the same.").

[45] *Id.* at 891. In *AIG II*, the Delaware Court of Chancery declined to apply the adverse interest exception to *in pari delicto* because the plaintiffs did not allege "the type of total abandonment of the corporation's interests traditionally needed to invoke the adverse interest exception." *Id.*

11

Plaintiffs argue that there are no genuine issues of material fact in dispute because: (1) the BBD Audit found that Chris Tigani left N.K.S. approximately in $29,000,000.00 in debt; (2) the Bramley Report found that Chris Tigani converted $5,124,493.00 of N.K.S. funds to his own personal use; and (3) N.K.S. was forced into a Forbearance Agreement with its lenders, the terms of which required NKS to incur additional costs, expenses, and increased interest rates on outstanding loans.

In response, WWD argues that material disputes of fact remain as to whether N.K.S. may have derived some benefit from the acts of Chris Tigani because: (1) among the issues never resolved at trial in the Chancery Action was whether, and to what extent, the expenditures in question were pursued for the benefit of N.K.S. and its business interests; and (2) the analysis in the Bramley Report was inconclusive as to whether certain of the expenditures and transactions Chris Tigani authorized were pursued for N.K.S.'s benefit. WWD further contends that the BBD Audit and Bramley Report have not been authenticated or tested by WWD through depositions, and additional discovery is necessary.

Viewing the facts in a light most favorable to WWD, because a genuine issue of material fact exists as to whether N.K.S. may have derived some benefit from the acts of Chris Tigani, Plaintiffs are not entitled to judgment as a matter of law regarding WWD's affirmative defense of *in pari delicto*.

Rather, the Court found that the plaintiffs only alleged that the top ranking AIG officials "had an admixture of corporate and personal objectives in mind when they acted." *Id.* at 892.

12

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike or Alternatively for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
Jan R. Jurden, Judge